**IN THE UNITED STATES DISTRICT COURT
FOR THE SOURTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>    Plaintiff,<br><br>  vs.<br><br>**JESSE R. BENTON,<br>JOHN F. TATE, and<br>DIMITRIOS N. KESARI,**<br><br>    Defendants. | No.  4:15-CR-103-JAJ<br><br><br><br>**DIMITRIOS KESARI'S BRIEF IN<br>SUPPORT OF HIS MOTION FOR<br>JUDGMENT OF AQUITTAL OR<br>FOR A NEW TRIAL** |

   The Government is using this case in an improper attempt to change a law that it finds distasteful. Its theory of criminal liability would render the statutes at issue unconstitutionally vague and would result in a dangerous precedent. The jury was also not accurately instructed on the law at issue in this case. Evidence was admitted at trial that was both unfairly prejudicial and amounted to improper character evidence. Additionally, the prosecution team violated Mr. Kesari's rights on numerous occasions, including violating his right to counsel by invading the attorney-client privilege, violating his right to receive witness statements containing *Giglio* and *Jencks Act* material, and violating his proffer agreement with the Government.

   For the reasons described in this brief and in his prior motions, in addition to the reasons described in the briefs of Defendants Tate and

Benton, Mr. Kesari moves this Court for a judgment of acquittal, pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure or for a new trial, pursuant to Rule 33 of the Federal Rules of Criminal Procedure.

Defendants Benton and Tate accurately recite the appropriate standards for motions under Rule 29(c) and Rule 33 in their respective briefs. Both of those briefs are fully incorporated into this brief.

## I. The Overt Acts Alleged Against The Defendants Do Not Give Rise To Criminal Culpability

The Court should decline the Government's invitation to change or supplement statutory federal election law. The invitation is without legal support and would render the statutes at issue unconstitutionally vague. Federal law requires that candidate committees report the name, date, amount, and purpose of expenditures. 52 U.S.C. § 30104(b)(5)(A). Congress could have required that ultimate payees be disclosed; it declined to do so. It could have prohibited payments through conduits or paymasters, but it chose not to. It could have required that payments that reach other entities or persons be through a *bona fide* vendor that is otherwise doing work for the campaign. Once again, Congress chose not to make such a requirement. The Federal Election Commission could have attempted to make such requirements or prohibitions in interpreting the statute. It too demurred at such opportunities.

Frustrated that Congress and the F.E.C. have decided not to prohibit the normal practice of paying vendors through third parties, the Government comes before this Court (in an apparent first of its kind prosecution) seeking that its proposed rule be adopted by judicial fiat. In essence, the Government is asking the Court to close a *loophole* in the law (that *loophole* being the lack of a prohibition against paying vendors through a third party for the purpose of hiding the ultimate payee) that it finds distasteful. It is not, however, the job of courts to add requirements to statutes or to close *loopholes*—that job belongs to Congress. *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 457 (2007) ("The 'loophole,' in our judgment, is properly left for Congress to consider, and to close if it finds such action warranted"); *see also United States v. First Nat'l Bank of Detroit*, 234 U.S. 245, 260 (1914) ("It is the province of the courts to enforce, not to make, the laws").

The Government has consistently argued in this case that the Defendants' legal position attempts to complicate the simple and that their arguments are "down in the weeds." It argues that this is a case of a false filing because the payments were disclosed as being to ICT for audio/visual expenses[1] instead of being to Kent Sorenson for his endorsement. While attractively simple, the Government's argument has

---

[1] Defendant Tate provides an excellent analysis of why even the disputed issue of the *purpose* disclosed on the Paul campaign's filings do not raise a colorable claim for criminal liability in this case. For the sake of brevity, Mr. Kesari will not repeat those arguments. Instead, he incorporates them in full.

no legal support. Indeed, the argument makes a logical leap unsupported by statute. The law simply requires that campaigns disclose to whom they cut a check, the date it was cut, the amount, and the purpose. To require more necessitates legislation, which is the duty of the first branch of Government, not the third. The Defendants' arguments are not "in the weeds;" they are in the law.

Not only are the Government's arguments without precedent, they would also render the statues at issue unconstitutionally vague, either in total or as applied to these Defendants. The Supreme Court has shown a desire to preserve the will of Congress by narrowing the interpretation of a vague provision of a statute rather than striking down the law. *See Skilling v. United States*, 561 U.S. 358, 405-406 (2010). When the Government takes actions that ignore limitations on a statute in favor of broad prosecutorial discretion, however, it demonstrates a need for Congress, rather than the courts, to more clearly indicate its intent by amending the statute. Courts should not "uphold an unconstitutional statute merely because the Government promised to use it responsibly." *United States v. Stevens*, 559 U.S. 460, 480 (2010). Nor should courts judicially amend a vague statute in the face of prosecutorial abuse.

The issues of vagueness and lenity are especially important because of the political nature of this case. The Defendants were engaged in a political campaign for a candidate who favored a political platform that is almost certainly repugnant to many in the Department of Justice.

To allow the Government such broad latitude in prosecuting individuals engaged in political campaigns under vague statutory requirements is especially dangerous for reasons discussed by Justice Breyer in recent weeks. During oral arguments in the case of *McDonnell v. United States*, Sup. Ct. Dkt. No. 15-474 (April 27, 2016), Justice Breyer described his problem with the prosecution of Governor McDonnell, for reasons that are directly analogous to this case:

> [I]t's not because I'm in favor of dishonest behavior. I'm against it… My problem is the criminal law as the weapon to cure it. And if the criminal law is the weapon that goes as far as you want there are two serious problems. One, political figures will not know what they're supposed to do and what they're not supposed to do, and that's a general vagueness problem.
> And the second I'd call it a separation of powers problem. The Department of Justice in the Executive Branch becomes the ultimate arbiter of how public officials are behaving…. [I]t puts at risk behavior that is common…
> Now, suddenly, to give that kind of power to a criminal prosecutor, who is virtually uncontrollable, is dangerous in the separation of powers sense. So in my mind… in this case, is a – as fundamental a real separation of – of powers problem as I've seen.

*McDonnell* Tr., 31-32, attached as Ex. 1.

Justice Breyer was discussing honest services fraud, not election law. His logic, however, is equally applicable to this case. Our entire system of government and separation of powers is based on an electoral process protected by the First Amendment. It is just as dangerous (perhaps even more dangerous) to make the Department of Justice the

ultimate arbiter of how candidates for political office and their supporters behave as it is to make them the arbiters of the actions of those already elected. Ultimately, these candidates are discussing what laws the Department will attempt to enforce, what laws Department employees will be subject to, and how much funding the Department will receive to operate and pay employees. To allow them the unfettered power to prosecute political operatives and activists for violations of their unsubstantiated interpretations of the law is as dangerous a proposition as any court is likely to consider. It gives federal prosecutors an opportunity for exercising influence that they should not have.

## II.     The Jury Was Incorrectly Instructed

Mr. Kesari filed his Objections to Jury Instructions filed on May 5, 2016.  Dkt. No. 567.  He fully incorporates that filing into this Motion.

The Court declined to instruct the jury that the law does not prohibit federal campaign committees from using conduits, pass-through, or paymasters when paying vendors and sub-vendors, as previously discussed. In its order of April 20, 2016, the Court seemed to partially recognize this principle when it promised an instruction stating "the use of a recipient to pay other people alone does not constitute an FEC violation. " Dkt. No. 519. Such language, however, was not included in the final jury instructions.

The Court also did not issue an instruction explaining that there is no obligation to disclose an expense to the F.E.C. until the campaign has

made payment to the vendor, regardless of when an invoice was received or whether a future payment was anticipated. In this case the Government spent a great deal of time highlighting evidence that Kent Sorenson wished to be paid and that he went to the media claiming that he was not being paid. It placed special emphasis on emails telling staff members to wipe payments "from the books" that were never made. This evidence was especially prejudicial because the jury was not instructed that there was never an obligation on behalf of the campaign to report anything having to do with Mr. Sorenson or Grassroots Strategy, Inc. in December 2011.

Mr. Kesari incorporates his other objections to jury instructions that were made on the record and in court filings, including, but not limited to Dkts. 247, 276, 276-1, 276-2, 504, 549, and 567.

### III. The Government Introduced Unfairly Prejudicial Character Evidence That Violated The Rules Of Evidence

The Federal Rules of Evidence prohibit the admission of irrelevant evidence. Fed. R. Evid. 401. Even relevant evidence should be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403. Unfair prejudice occurs when there is an undue tendency to suggest an improper basis for a conviction, which often includes an emotional basis. *United States v. Lupino*, 301 F.3d 642, 646 (8th Cir. 2002).

Fed. R. Evid. 404(b) prohibits the admission of other crimes, wrongs, or acts to prove a person's character in order to show that a defendant acted in accordance with the character or trait. Even when character evidence is admissible, it has to be offered by testimony, rather than extrinsic evidence, Fed. R. Evid. 405, or in compliance with the provisions of Fed. R. Evid. 404(b).

The Government introduced Exhibit 62 in un-redacted form. That email suggested that Mr. Kesari was "not a good person." It accused him, without basis, of sending an email with a vulgar title, specifically "Blow me Fernando.pdf." These inflammatory accusations were irrelevant to the case, unfairly prejudicial, and the very example of improper character evidence under Rules 404 and 405. Mr. Kesari objected to the emails. The Court overruled the objection. Mr. Kesari then asked the Court to redact the irrelevant and inflammatory language. Again the Court demurred. Mr. Kesari was entitled to be judged based on relevant evidence that he allegedly violated campaign finance laws, not on unfounded accusations that he is "not a good guy" or that he sent a lewd email. The Court's failure to exclude or redact the email (as it had in the October trial) deprived him of that right. Consequently, the Court should order a new trial.

**IV.   The Court Erred When It Declined To Grant Mr. Kesari's Motion for *Jencks* and *Giglio* Material**

The law is clear: "[A]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500. Mr. Kesari moved for such material on or about May 3, 2016. The Court, however, erred when it declined to order the Government to produce such statements. As described in Mr. Kesari's Motion Regarding Failure of Government to Produce Notes of Witness Interviews, Dkt. No. 545, and its reply brief in support (which are fully incorporated into this Motion) the testimony by Government witnesses show that these notes exist. Moreover, the information learned by the Government at the meetings at issue must be produced pursuant to *Giglio v. United States*, 405 U.S. 150, 154-55 (1972). Consequently, the Court should enter a judgment of acquittal, or, at the very least, vacate Mr. Kesari's convictions, order a new trial, and order the Government to provide Mr. Kesari with *Jencks* and *Giglio* material.

### V. The Government Violated Mr. Kesari's Sixth Amendment Right to Counsel When it Disregarded and Invaded the Attorney-Client Privilege

Mr. Kesari moved this Court to dismiss the indictment, vacate his conviction, and for other relief based on the Government's invasion of his privileged communications in violation of the Sixth Amendment. That motion is currently pending before Judge Adams for Report and Recommendation. For the reasons stated in that motion, Mr. Kesari now also moves for a judgment of acquittal or, at the very least, for a new trial, with the Government's prosecution team and the Public Integrity section disqualified from any such trial.

### VI. The Government Violated Mr. Kesari's Fifth Amendment Rights When It Introduced His Proffer Statement In A Pre-Trial Motions Hearing

On February 18, 2016, Mr. Kesari moved this Court to dismiss the indictment against him because of the Governments' violation of his Fifth Amendment rights when they improperly introduced his witness statement to the Court in violation of his proffer agreement with the Government. Dkt. 433. For the reasons stated in that filing, Mr. Kesari now also moves the Court for a judgment of acquittal or for a new trial, because of that violation.

Mr. Kesari moves this court for a judgment of acquittal or, in the alternative for a new trial, for the foregoing reasons and for the reasons

stated in (1) Mr. Kesari's previous motions for a judgment of acquittal made on or about October 19, 2015, November 5, 2015, Dkt. No. 318, and May 3, 2016 (2) Defendant Benton's motions for a judgment of acquittal or for a new trial, Dkt Nos. 544, 580-1, and 581, (3) Defendant Tate's motions for a judgment of acquittal or for a new trial, Dkt Nos. 543, 582-1, and 583, (4) the motions to dismiss previously filed in this case, (5) his Motion for Reconsideration, Dkt. No. 532, and (5) for the other filings listed herein.

Dated: May 19, 2016

/s/ Jesse R. Binnall

Jesse R. Binnall
Susannah S. Wright
HARVEY & BINNALL, PLLC
717 King Street, Suite 300
Alexandria, Virginia 22314
(703) 888-1943
(703) 888-1930 – facsimile
jbinnall@harveybinnall.com
ssmith@harveybinnall.com
*Counsel for Dimitri Kesari*

CERTIFICATE OF SERVICE
I hereby certify that on May 19, 2016, I electronically filed this document with the Clerk of Court using the ECF system, which will serve it on the appropriate parties.

/s/ Jesse Binnall