1

```
 1          IN THE SUPREME COURT OF THE UNITED STATES
 2    - - - - - - - - - - - - - - - - - x
 3    ROBERT F. McDONNELL,              :
 4              Petitioner            :  No. 15-474
 5         v.                          :
 6    UNITED STATES.                    :
 7    - - - - - - - - - - - - - - - - - x
 8                          Washington, D.C.
 9                          Wednesday, April 27, 2016
10
11              The above-entitled matter came on for oral
12    argument before the Supreme Court of the United States
13    at 10:02 a.m.
14    APPEARANCES:
15    NOEL J. FRANCISCO, ESQ., Washington, D.C.; on behalf
16       of Petitioner.
17    MICHAEL R. DREEBEN, ESQ., Deputy Solicitor General,
18       Department of Justice, Washington, D.C.; on behalf of
19       Respondent.
20
21
22
23
24
25
```

2

1                    C O N T E N T S

2      ORAL ARGUMENT OF                                    PAGE

3      NOEL J. FRANCISCO, ESQ.

4          On behalf of the Petitioner                       3

5      ORAL ARGUMENT OF

6      MICHAEL R. DREEBEN, ESQ.

7          On behalf of the Respondent                       28

8      REBUTTAL ARGUMENT OF

9      NOEL J. FRANCISCO, ESQ.

10         On behalf of the Petitioner                       56

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Official - Subject to Final Review

3

```
 1                    P R O C E E D I N G S

 2                                        (10:02 a.m.)

 3            CHIEF JUSTICE ROBERTS:  We'll hear argument

 4    this morning in Case 15-474, McDonnell v. United States.

 5            Mr. Francisco.

 6          ORAL ARGUMENT OF NOEL J. FRANCISCO

 7              ON BEHALF OF THE PETITIONER

 8            MR. FRANCISCO:  Mr. Chief Justice, and may

 9    it please the Court:

10            The government argues that in quid pro quo

11    bribery, "official action" encompasses anything within

12    the range of official duties.  In order to reach that

13    conclusion, it asks that you disregard a 9-0 decision of

14    this Court.

15            The government is wrong.  In order to engage

16    in "official action," an official must either make a

17    government decision or urge someone else to do so.  The

18    line is between access to decision-makers on the one

19    hand and trying to influence those decisions on the

20    other.

21            JUSTICE KENNEDY:  And that's the Sun-Diamond

22    case, the 9-0 case that you refer to.

23            MR. FRANCISCO:  Yes, Your Honor, the

24    Sun-Diamond case, the 9-0 case.  And I think what

25    Sun-Diamond confirms is that when an official simply
```

Official - Subject to Final Review

4

1    refers someone to another official, an independent

2    decision-maker for an objective decision, he hasn't

3    crossed that line into prohibited "official action."

4              JUSTICE KENNEDY:  I take it all parties

5    concede that the act of the university official to

6    undertake or not to undertake a research study would be

7    an "official action."

8              MR. FRANCISCO:  Yes, Your Honor.  And the

9    question is:  Did the Governor cross the line into

10   influencing officials to undertake that action and was

11   the jury properly instructed?

12             JUSTICE KENNEDY:  Can you tell me the

13   posture of the case with reference to under Virginia

14   law, the government -- the Governor's authority or lack

15   of authority to tell the university, you will engage in

16   this research or you will not engage?

17             MR. FRANCISCO:  Sure, Your Honor.  He --

18             JUSTICE KENNEDY:  What is the state of the

19   law, and do -- do the parties agree on this point?

20             MR. FRANCISCO:  Your Honor, I think that the

21   parties agree that the Governor at least had a bully

22   pulpit authority, but he had very little authority to

23   actually direct any university researcher to do

24   anything.  And here I think one of the critical -- there

25   are two critical questions:  One, was the jury told that

1    it even had to find that he tried to do that and here it

2    wasn't; and, two, did he in fact do that.  And we would

3    assert that he clearly didn't.

4              JUSTICE GINSBURG:  Would it have made a

5    difference if the medical faculties had agreed to the

6    testing?

7              MR. FRANCISCO:  Your Honor, if they had

8    agreed to the testing, I still don't think it would have

9    made a difference in terms of whether Governor McDonnell

10   tried to influence their decision on that, because he

11   didn't.  And it still wouldn't have made a -- a

12   difference on the jury instructions because the jury

13   still wasn't instructed that it had to find that

14   Governor McDonnell tried to influence a particular

15   governmental decision, because it wasn't so instructed.

16             JUSTICE KAGAN:  Mr. Francisco, could I

17   ask -- the line you're drawing between exercising

18   influence and providing access, just to sort of test

19   that with a hypothetical, suppose that somebody knew

20   that there was a -- a contractor who was going to award

21   a very large contract to one of two or three firms that

22   the -- that he was meeting with.  And -- and a company

23   paid to make sure that they were on the meet list, to be

24   one of those two or three firms, in other words,

25   bribed --

Official - Subject to Final Review

1            MR. FRANCISCO:  Sure.

2            JUSTICE KAGAN:  -- an official in order to

3    become one of those two or three firms from which that

4    was the pool from which --

5            MR. FRANCISCO:  Right.

6            JUSTICE KAGAN:  -- this billion-dollar

7    contract would emerge, would that be sufficient?

8            MR. FRANCISCO:  Your Honor, I think that

9    probably would be "official action" because there the

10   only way you can even get a decision in your favor is by

11   being one of three people on that list.  So being on

12   that list is a prerequisite to getting a decision.

13   Being denied -- denied on that list is a denial of the

14   decision, and that's an official governmental action.

15           Here the jury wasn't instructed on any of

16   this.  They didn't have to find that Governor McDonnell

17   tried to influence anything.  Indeed, it would have been

18   required to convict under these instructions if Governor

19   McDonnell had called up a staff member and said, I'd

20   like to -- you to meet with this fellow, Johnnie

21   Williams.  I don't really trust him.  His product is a

22   little hinky, but you're the expert.  So meet with the

23   guy and exercise your complete and unfettered judgment.

24           JUSTICE KAGAN:  Can I --

25           JUSTICE ALITO:  Let me -- let me just change

Official - Subject to Final Review

7

1    the hypothetical a little bit.  Suppose that a Governor

2    is going to make a -- eventually going to make a

3    decision that will help either A or B and hurt either A

4    or B, and the Governor says, you know, I'm going to have

5    a preliminary discussion about this with members of my

6    staff.  We're not going to come to any decision, but

7    we're going to talk about it.  And whichever of you pays

8    the most money will be able to sit in on this staff

9    meeting.  What about that?

10          MR. FRANCISCO:  Sure.  Well, Your Honor, I

11   think I'd want to know, are there facts suggesting that

12   it really isn't just a payment to sit in on the staff

13   meeting?  It's a payment to try to influence the

14   meeting?

15          JUSTICE ALITO:  Just a payment to sit in.

16          MR. FRANCISCO:  To sit on the -- I think it

17   would violate a whole lot of other laws, but I don't

18   think, unless there was any kind of indicia that you

19   were trying to influence the outcome, you would cross

20   that line into prohibited "official action" corruption.

21          After all, these laws are not meant to be

22   comprehensive codes of ethical conduct as this Court

23   said in Sun-Diamond.  They're meant to target the worst

24   form of ethical misconduct, the corruption of official

25   decision-making.

Official - Subject to Final Review

8

1              JUSTICE ALITO:  What if it's not just

2     sitting in?  Maybe I wasn't -- I should sharpen this.

3     Supposed the party is allowed to speak and present its

4     point of view.

5              MR. FRANCISCO:  Your Honor, again, the more

6     facts that you put on to suggest that it is more of an

7     attempt to influence the decision, it's not just a

8     meeting.  I think the more likely you are to get to that

9     "official act" --

10              JUSTICE SOTOMAYOR:  So tell me, what do we

11     do with the evidence in the case that the university

12     individuals who were assessing whether or not to do

13     these studies themselves felt pressured?  There is both

14     testimony and documents in which the pros and cons of

15     accepting these studies was discussed.

16              MR. FRANCISCO:  Right.

17              JUSTICE SOTOMAYOR:  And in the pro and con,

18     it was, the Governor really wants us to do this.

19              MR. FRANCISCO:  I --

20              JUSTICE SOTOMAYOR:  The Governor is

21     pressuring us to do this.  We just don't think it's a

22     good idea.  They were honorable people, obviously.  But

23     the point is, what do we do with the fact that they

24     perceived that he was trying to influence them?

25              MR. FRANCISCO:  I have two responses, Your

1    Honor, a legal one and a factual one.  Legally, you

2    still need to instruct the jury that it had to find that

3    Governor McDonnell tried to actually influence a

4    government decision.  And here it wasn't instructed, so

5    they could have completely agreed --

6                 JUSTICE SOTOMAYOR:  But why?  Isn't this --

7    I thought that this crime was taking money knowing that

8    it was being paid to influence an "official act."  So

9    aren't all of these examples of "official acts" whether

10   they are or they aren't irrelevant?  The question is,

11   what was his intent at the moment he took the money?

12   And why couldn't --

13                MR. FRANCISCO:  Yeah.

14                JUSTICE SOTOMAYOR:  -- a jury infer at that

15   moment that he took it with the intent to commit an

16   "official act" the way Mr. Williams wanted it committed?

17                MR. FRANCISCO:  So again, Your Honor, two

18   responses.  Even assuming that the jury could have

19   inferred it, you still need to tell them what an

20   "official act" is, that an "official act" is an attempt

21   to influence a governmental decision.

22                JUSTICE SOTOMAYOR:  Well --

23                MR. FRANCISCO:  Understand --

24                JUSTICE SOTOMAYOR:  -- to study these

25   dietary supplements.

1          MR. FRANCISCO:  Well, to -- to actually, you

2     know, conduct tobacco commission-funded State studies,

3     but you still need to tell them what that is.  But I'll

4     get directly to your question.  Why is it that the

5     actual "official acts" are relevant?  And that's because

6     both the district court and the courts of appeals'

7     opinions made clear.

8          Here in this case, the corrupt agreement

9     turned entirely upon, as the district court case said.

10    It hinged upon whether the five specific acts were, in

11    fact, "official acts," because in the absence of any

12    direct evidence of a corrupt agreement, the government's

13    argument was that you could infer one from the pattern

14    of actual "official acts" on the one hand and the

15    pattern of gifts and loans on the other and the temporal

16    connection between the two.

17         JUSTICE KENNEDY:  And so is it your position

18    at page 60 of the supplemental Joint Appendix -- the

19    instructions aren't numbered, which makes it a little

20    hard, but the judge instructs the jury that "official

21    actions" are set forth in the five paragraphs of the

22    indictment.  And is it your position that at least some

23    of those are not "official acts"?

24         MR. FRANCISCO:  Yes, Your Honor, and

25    certainly the five things that were proved in this case

1    are not "official acts."  And likewise, I don't think

2    any of those things, as they actually came into

3    evidence, demonstrated "official acts" because in none

4    of them did Governor McDonnell cross that line in trying

5    to influence the outcome of any particular decision.

6    And just as critically, the jury was never told it had

7    to find that.  So the jury in this case, Justice

8    Sotomayor, could have completely agreed with our version

9    of the facts.  It could have agreed that as we argued

10   very vigorously that the most that Governor McDonnell

11   did here was refer Johnnie --

12            JUSTICE SOTOMAYOR:  The matter --

13            JUSTICE KENNEDY:  Well, this gets back

14   somewhat to Justice Alito's hypothetical about arranging

15   the meeting, and we -- and we can up the ante to see

16   how -- how close the meeting came to be an -- an

17   "official act."  But I -- I take it that at some point

18   your position is that a governmental -- that an

19   "official act" must be the exercise of governmental

20   power.  Is that your position?

21            MR. FRANCISCO:  Well, Your Honor, it's

22   either making a decision on -- on an exercise of

23   governmental power, trying to influence it, as in the

24   Birdsall case, where the defendants there were trying to

25   persuade the grant of clemency.

1          But if you're simply setting up a meeting so

2    that somebody can appeal to the independent judgment of

3    an independent decisionmaker and you're not trying to

4    put your thumb on the scale of the outcome of that

5    meeting, then that simple referral can't possibly be

6    official action.  After all, government officials refer

7    friends and benefactors to staff members all the time in

8    order to avoid taking official action.

9          JUSTICE GINSBURG:  Do you -- do you concede

10   that there is sufficient evidence in this record --

11   let's say we accept your argument about the charge being

12   insufficient.  But this could go back, and a jury could

13   be asked:  Did the Governor try to influence a decision

14   on the part of the medical faculties?

15         MR. FRANCISCO:  Your Honor, we don't concede

16   there was sufficient evidence.  But regardless, we -- we

17   also argue that the jury was improperly instructed on

18   this, which, Justice Sotomayor, goes to the point, I

19   think, you were making.  If the jury was improperly

20   instructed, then you don't actually assume all of the

21   evidence in favor of the government.  The question then

22   becomes:  Could a -- would a properly-instructed juror

23   have been required to convict?

24         Here, even if the jury completely agreed

25   with us, and they very well may have, under these

Official - Subject to Final Review

1    erroneous instructions they still would have been

2    required to convict, because under these instructions,

3    simply referring somebody to a meeting without trying to

4    influence the outcome of that meeting constitutes

5    official governmental action.

6            CHIEF JUSTICE ROBERTS:  Well, suppose

7    arranging a meeting could be official government action,

8    if that were your job.  In other words, you're not just

9    a secretary, but your job was to manage the Governor's

10   schedule.  You decided who met with him, you decided

11   when, and that -- that's your job.  That's -- so

12   anything that individual does, I suppose, would be an

13   official act.

14           MR. FRANCISCO:  I think that's possible,

15   Chief Justice.  Of course, in this case we don't have

16   anything like that.  We simply have referrals to

17   meetings with other officials so that, at best, the

18   alleged bribe payor here, Jonnie Williams, can try to

19   persuade them to his cause.

20           JUSTICE KAGAN:  Well, can I follow up on

21   that?  Because what you just suggested, right, is that

22   you could -- suppose that there were a scheduler for a

23   Governor or for the President or whatever, and that

24   scheduler was selling meetings.  So you would think

25   that's part of her job?  And if I just understood you

Official - Subject to Final Review

1   correctly, that falls within the statute?

2           MR. FRANCISCO:  No, Your Honor.  I think

3   that would be a very close case.  That -- that would be

4   a very close case, because at the end of the day, if

5   you're not actually making a governmental decision or

6   influencing the outcome of an actual governmental

7   decision, I think you -- and Chief Justice, you might

8   actually be violating a lot of other laws, including the

9   separate provision in Section 201 that prohibits you

10  from undertaking any act in violation of your official

11  duties in exchange for money, or 5 U.S.C. 7353, which

12  prohibits you from -- from taking anything from anyone

13  whose interests could be affected by the performance or

14  nonperformance of your duties.

15          But I think that the line has to be, and the

16  only line that comes out through the cases is, you're

17  actually either making a decision on because of the

18  government, or you're urging someone else to do so.

19  You're trying to pushing them in a certain direction.

20          JUSTICE BREYER:  It seems to me when you say

21  "urging" -- now, wait.  See, I can go back to a lot of

22  different commission, the Brown Commission, the Senate

23  S1, the language of the statute, and I read "official

24  action," something quite similar to the statute here, "A

25  decision, opinion, recommendation, judgment, vote, or

1   other conduct" -- perhaps other similar conduct --

2   "involving an exercise of discretion."

3            So in this case, the official action we're

4   talking about is giving money to a group of people in

5   the university to conduct a study.

6            Now, the Governor didn't do that.  But a

7   person who tries to influence an official action and is

8   also in the government is also guilty.  But wait.

9   That's the Indian case.

10            MR. FRANCISCO:  Yes.  You're correct.

11            JUSTICE BREYER:  But wait.  The word

12   "influence" is too broad, because every day of the week

13   politicians write on behalf of constituents letters to

14   different parts of the government, saying, will you

15   please look at the case of Mrs. So-and-so who was

16   evicted last week?  And that's so common, you can't pick

17   that up.

18            But then you use the word "urge."  That's

19   not exactly a legal word.  And what I'm looking for is a

20   set of words that will describe in both sides' positions

21   what we should write as the words that describe the

22   criminal activity involved in talking to or influencing

23   the person who does create the official act, like give a

24   pardon.

25            MR. FRANCISCO:  Right.

Official - Subject to Final Review

1          JUSTICE BREYER:  Like award a contract, like

2     vote, like -- et cetera.  Now, those are the words that

3     I can't find, and I'd appreciate your opinion.

4          MR. FRANCISCO:  Sure, Your Honor.  And I

5     think that the answer is that what district courts have

6     to do is understand the general rule, which I think at

7     some level has to be an attempt to influence, and then

8     flesh it out in a way that's appropriate to the facts of

9     the case.

10          JUSTICE BREYER:  You want to use "attempt to

11     influence"?  My goodness.  Letters go by the dozens over

12     to the secretary of HUD, to the secretary --

13          MR. FRANCISCO:  Right.

14          JUSTICE BREYER:  -- of -- of HHS, to the

15     secretary or the assistant secretaries, and they say, my

16     Constituent Smith has a matter before you that has been

17     pending for 18 months; we would appreciate it if you

18     would review that and take action.  And then the elected

19     official says to Smith, I did my best on this.  And

20     Smith thinks, good, he's used his influence.

21          MR. FRANCISCO:  Right.

22          JUSTICE BREYER:  A crime?  My goodness.

23          MR. FRANCISCO:  Absolutely not, Your Honor.

24          JUSTICE BREYER:  All right.  Fine.

25          MR. FRANCISCO:  Absolutely not.

1              JUSTICE BREYER:  You say "absolutely not."

2    That's what I thought that you would say.

3              MR. FRANCISCO:  And I think that --

4              JUSTICE BREYER:  So I want to know -- but

5    the words you used were "attempt to influence."  And so

6    -- though I don't think that's the right word, and I

7    want to know what the right words are --

8              MR. FRANCISCO:  Sure.

9              JUSTICE BREYER:  -- in the instruction that

10   the judge is going to give.  Not in your case --

11             MR. FRANCISCO:  Um-hmm.

12             JUSTICE BREYER:  -- but in general.

13             MR. FRANCISCO:  Well, can I give you an

14   example from another case that, although I do think

15   instructions are generally tailored to the case, an

16   example --

17             JUSTICE BREYER:  Of course they are.  But

18   you have to have the standard that will distinguish the

19   urger --

20             MR. FRANCISCO:  Sure.

21             JUSTICE BREYER:  -- from the one who does it

22   criminally and the one who doesn't.

23             MR. FRANCISCO:  And in the Ring case, I

24   thought that Judge Huvelle had some very useful

25   instructions --

Official - Subject to Final Review

 1                 JUSTICE BREYER:  Mm-hmm.

 2                 MR. FRANCISCO:  -- where she wrote -- and

 3      this is at page 1083 of the Joint Appendix --

 4      "Therefore, 'official action' includes the exercise of

 5      both formal official influence, such as the

 6      legislature's vote on legislation, and informal official

 7      influence, such as a legislature's behind-the-scenes

 8      influence on other public officials in the legislative

 9      or executive branches."

10                 JUSTICE BREYER:  Well, there we have it.

11      There we have it.  All these letters going over, saying,

12      please look at Mrs. Smith's eviction notice.

13                 MR. FRANCISCO:  And --

14                 JUSTICE BREYER:  Mrs. Smith, who, by the

15      way, took me to lunch last week.

16                 (Laughter.)

17                 MR. FRANCISCO:  And I completely agree, Your

18      Honor, which is why in our proposed instruction --

19                 JUSTICE BREYER:  That won't do it.  The one

20      you just read won't do it.

21                 MR. FRANCISCO:  Well -- well, and that's why

22      in our proposed instructions, I think it needs to be

23      tailored further to the facts of the case.  So in our

24      case we went on to say -- say merely arranging a

25      meeting, attending an event, hosting a reception, or

1    making a speech are not standing-alone "official acts."

2    Either you use it --

3              JUSTICE BREYER:  All right.  So you use

4    that.  The key to the word in there is "merely."

5              MR. FRANCISCO:  Yes, Your Honor.

6              JUSTICE BREYER:  Because sometimes it could.

7              MR. FRANCISCO:  Yes, Your Honor.

8              JUSTICE BREYER:  And somebody might have the

9    embarrassing question, merely when it can or merely when

10   it can't.  Give me a little enlightenment.

11             MR. FRANCISCO:  Your Honor, I think that the

12   answer is, if -- if the evidence shows that there was --

13   and I hate to go back to the word that I -- I know you

14   don't like here, but if the evidence shows that there

15   really wasn't attempt -- an attempt to try to push the

16   separate decisionmaker that you're supposedly trying to

17   influence one way or another, but you really are just

18   sending it over for a meeting, and -- and that

19   independent decisionmaker is left to their independent

20   judgment, then you haven't crossed that line.  But if --

21             JUSTICE KAGAN:  Mr. --

22             JUSTICE GINSBURG:  The word -- the word that

23   Justice Breyer is concerned about comes from Birdsall,

24   with intent to influence their "official action."  So we

25   can hardly fault the district judge for using in Ring

Official - Subject to Final Review

1    the same words that this Court used in Birdsall.

2                   MR. FRANCISCO:  I -- I agree, Your Honor.  I

3    thought that Judge Huvelle did a very good attempt at

4    defining, because she actually went further than what I

5    just read to you, Justice Breyer.  She continues along

6    the lines that we proposed in our instructions that,

7    quote, "Mere favoritism as evidenced by a public

8    official's willingness to take a lobbyist's telephone

9    call or to meet with the lobbyist, is not an 'official

10   act.'"

11                  So I think that the idea is, Your Honor -- I

12   understand, Justice Breyer, that influence itself

13   doesn't totally solve the problem.  But what district

14   court judges do is they then explain to the jury what

15   they mean by influence, and influence is not --

16                  JUSTICE KENNEDY:  Where can we find the best

17   definition, in your view, of an "official act"?

18                  MR. FRANCISCO:  Your Honor, I think that the

19   best definition of an "official act" is -- is

20   essentially the one that I tried to articulate at the

21   outset.  You need -- you need to either make a decision

22   on behalf of the government, or try in some way to use

23   your influence to pressure or urge or persuade or cajole

24   someone else who has governmental power to make a

25   decision on an action.

1          JUSTICE KENNEDY:  Well, I --

2          JUSTICE KAGAN:  Can I --

3          JUSTICE KENNEDY:  I agree with Justice

4    Breyer.  I just don't see the limiting principle in the

5    second part.

6          MR. FRANCISCO:  Your Honor, I think in many

7    -- in some cases, I think the limiting principle might

8    be difficult; it's not a perfect and precise

9    formulation.  But I think in this case it's a

10   particularly easy principle, because here the jury

11   wasn't given any instruction on the line at all.

12          So Justice Breyer, in your hypothetical,

13   sending that letter over is an "official act" under the

14   instructions as given and under the theory pushed by the

15   Solicitor General's office in this case because it is

16   the action --

17          JUSTICE KENNEDY:  I'm -- I'm not sure -- I'm

18   not sure that's right.  It seemed to me the "official

19   act" is exercise of governmental power to require

20   citizens to do or not to do something, or to shape the

21   law that can -- that governs their conduct.

22          MR. FRANCISCO:  I -- I completely agree with

23   you, Justice Kennedy.

24          JUSTICE KENNEDY:  Under your view, under the

25   hypotheticals that have been thrown around, the janitor

Official - Subject to Final Review

22

1    who gets the bottle of beer in order to clean your

2    classroom first, I mean, is that -- is that a

3    governmental act?

4             MR. FRANCISCO:  Certainly not in my view,

5    but the government --

6             JUSTICE KENNEDY:  Well, what's the

7    difference?

8             MR. FRANCISCO:  The difference is, one --

9    one is you're exercising power on behalf of the

10   government as a whole.  So the janitor, for example, if

11   he's buying -- if he's using government money to buy

12   janitorial supplies and engaging in government

13   contracting, that's an exercise of governmental power.

14   If you're simply cleaning out a classroom, I don't think

15   you're exercising government power.

16            So, too, when you simply send somebody to

17   another official for an independent and objective

18   decision by that official, but you don't try to put your

19   thumb on the scales of that decision, you haven't

20   crossed the line.

21            And I think it's very important in a

22   criminal statute like this, because if you really do

23   think that a referral, just simply making a referral, is

24   "official action" that crosses the line into bribery, I

25   think you do have some very serious vagueness concerns

```
1    with the Hobbs Act and on a services question --
2              JUSTICE KAGAN:  Can I ask --
3              CHIEF JUSTICE ROBERTS:  Sure -- sure.  It
4    depends on who's making the referral or the call, right?
5    In Justice Breyer's hypothetical, if it's a
6    congressperson calling somebody and saying, could you
7    look into this matter for my constituent, the person
8    should look at it, I suppose, and then -- and that's one
9    thing.  If it's the President who calls and says, I want
10   you to look at this matter for my constituent, that
11   might exercise considerably more influence.
12             MR. FRANCISCO:  Two things, Your Honor.
13   First, you still do need to tell the jury that that's
14   what they have to find.  And here, the jury was never
15   told in any way, shape or form that they had to find an
16   attempt to influence.  So I think that is sufficient, in
17   and of itself, to, at the very least, require a new
18   trial here.
19             Under these instructions, as the government
20   itself seems to agree, any action within the range of
21   official duties constitutes official governmental
22   action.
23             So Justice Kennedy, in the letter being sent
24   over from a senator, since that is within the range of
25   official duties, that counts under the government's
```

1    formulation, and under the jury instruction as given,

2    since it is, after all, a settled practice of officials

3    to send these kinds of letters.  That's why it was

4    incumbent upon the district court to draw some kind of

5    limit.

6              And here, the jury could well have agreed

7    with us that even though he was the governor of the

8    State, Mr. Chief Justice, he did not try to influence

9    the actual decision.  He simply made the same type of

10   referral that he made day in and day out during this

11   administration where he simply sent a constituent to the

12   appropriate official --

13             JUSTICE KAGAN:  Mr. Francisco --

14             MR. FRANCISCO:  -- to exercise appropriate

15   judgment.

16             JUSTICE KAGAN:  -- if -- you said something

17   before, and I might have misunderstood you.  But do you

18   think that -- of the five listed "official acts," do you

19   think none of them meet the standards that you're

20   suggesting, or do you think some of them do and some of

21   them don't?

22             MR. FRANCISCO:  Two answers.  First of all,

23   we don't think that any of them meet the standard.

24             JUSTICE KAGAN:  Okay.  So let me --

25             MR. FRANCISCO:  But secondly --

Official - Subject to Final Review

25

1          JUSTICE KAGAN:  Go ahead, please.

2          MR. FRANCISCO:  But secondly, the jury could

3    have agreed with us on that, given the evidence we put

4    further.  And therefore, the erroneous instruction was

5    critical to this case, because even if they had agreed

6    with us, they would have been required to convict under

7    that erroneous instruction since -- take the healthcare

8    leaders reception.  They could have concluded that that

9    was an "official act" and that was the only basis to

10   convict, and they could have agreed with our evidence on

11   everything --

12          JUSTICE KAGAN:  Okay.  That -- that might be

13   right.  It might be that -- that you still have a -- a

14   winning argument even if some of the five are fine.

15   But -- but if we could just focus on them for a bit.  I

16   mean, for example, the third one --

17          JUSTICE KENNEDY:  They're -- they're at page

18   60 of the --

19          JUSTICE KAGAN:  The 6091.

20          JUSTICE KENNEDY:  Middle of the appendix.

21          JUSTICE KAGAN:  Contacting other officials

22   to influence Virginia State researchers to initiate

23   clinical studies.  So that's the one that seems to me to

24   really fall within your own definition.  Do you disagree

25   with that?

Official - Subject to Final Review

```
 1              MR. FRANCISCO:  Your Honor, I don't.  And if
 2   they had actually proved what was said in the indictment
 3   in the case, I think that this would be a -- we'd be
 4   making a different argument here.  But the problem is,
 5   they didn't prove that Governor McDonnell tried to
 6   encourage anybody.  The one --
 7              JUSTICE KAGAN:  So on something like that,
 8   your argument is a sufficiency argument?
 9              MR. FRANCISCO:  Yes, Your Honor.
10              JUSTICE KAGAN:  Rather than this was -- this
11   is not an "official act"?
12              MR. FRANCISCO:  And -- and -- yes, Your
13   Honor.  To be clear, we have two separate arguments
14   here.  One is on the jury instructions where our
15   argument is that even if they agreed with all of our
16   view of the facts, they still would have been required
17   to convict, given these erroneous jury instructions.
18              And secondly, our second argument is the
19   sufficiency argument.  Even a properly instructed jury,
20   in our view, could not have concluded that Governor
21   McDonnell crossed that line.
22              JUSTICE KENNEDY:  Well, just to be clear,
23   you -- you said at the outset you don't think any of
24   these are "official acts," but then I thought I heard
25   you say that, third, contacting other government
```

Official - Subject to Final Review

1    officials as part of an effort to encourage State

2    research is not an "official act"?

3            MR. FRANCISCO:  That's the indictment, Your

4    Honor.  If they had actually proved what was --

5            JUSTICE KENNEDY:  What was -- Justice Kagan

6    is asking, is that an "official act"?

7            MR. FRANCISCO:  If it actually --

8            JUSTICE KAGAN:  If it's true, but --

9            MR. FRANCISCO:  If he had tried to

10   encouraged them to do it, yes.  If they had proved that

11   he had tried to encourage them to do that, that would

12   have been an "official act."

13           Our argument is that, first, the jury was

14   never properly instructed on that question; and second,

15   he never did in fact urge university researchers to do

16   anything.

17           And if I could just conclude, before

18   reserving the remainder of my time for rebuttal, at the

19   one event where he actually had direct contact with the

20   university researchers, Justice Kagan, this was the

21   luncheon held at the mansion.  The -- all of the

22   witnesses who were there actually testified as to two

23   things with respect to the Governor.

24           First, he simply asked neutral questions

25   that didn't try to push the researchers' decisions one

Official - Subject to Final Review

1    way or another.  And secondly, the one time Jonnie

2    Williams asked him for something, support before Tobacco

3    Commission funding, he gave Jonnie Williams a very

4    polite no.

5              Mr. Chief Justice, if I could reserve my

6    time.

7              CHIEF JUSTICE ROBERTS:  Thank you, counsel.

8              Mr. Dreeben.

9         ORAL ARGUMENT OF MICHAEL R. DREEBEN

10             ON BEHALF OF RESPONDENT

11             MR. DREEBEN:  Thank you, Mr. Chief Justice,

12   and may it please the Court:

13             Petitioner seeks a categorical carve-out

14   from the concept of an "official act" for things like

15   meetings, phone calls, events, that, in his view, do not

16   further or advance or attempt to influence a particular

17   government action, but simply provide somebody with

18   access to the government.

19             CHIEF JUSTICE ROBERTS:  Well, he's not --

20   he's not the only one.  One -- there's an extraordinary

21   document in this case, and that's the amicus brief filed

22   by former White House counsel to President Obama, former

23   White House counsel to President George W. Bush, former

24   White House counsel to President Clinton, former White

25   House counsel to George H.W. Bush, former White House

1    counsel to President Reagan.  And they say, quoting

2    their brief, that "if this decision is upheld, it will

3    cripple the ability of elected officials to fulfill

4    their role in our representative democracy."

5           Now, I think it's extraordinary that those

6    people agree on anything.

7           (Laughter.)

8           CHIEF JUSTICE ROBERTS:  But -- but to agree

9    on something as sensitive as this and to be willing to

10    put their names on something that says this -- this

11    cannot be prosecuted conduct.  I think is extraordinary.

12           MR. DREEBEN:  It may be extraordinary, Mr.

13    Chief Justice, but that doesn't make it correct.  I

14    think it rests on several fundamental misconceptions

15    about what government actually does.  And I think it's

16    important to pause and look at the implications of what

17    Petitioner's pay-to-play theory of government really is;

18    that people can pay for access, that they can be charged

19    to have a meeting or have a direction made to another

20    government official to take the meeting.

21           It would mean, in effect, that if somebody

22    came to me and said, you know, I know you're having a

23    lot of college tuition issues.  We can help you with

24    that.  The criminal division is not giving us a meeting

25    on whether to appeal a case.  Just call them and see if

Official - Subject to Final Review

1   you can get them to take the meeting.  And I don't

2   know --

3            CHIEF JUSTICE ROBERTS:  You're --

4            JUSTICE KENNEDY:  I don't know --

5            CHIEF JUSTICE ROBERTS:  It's -- it's

6   somebody in the government whose client comes to them

7   and says, we'd really like the Solicitor General's

8   Office to file a brief in our case.  And then that

9   person calls you up and says, can you meet with

10  so-and-so?  All he wants to do is sit down with you and

11  persuade you why you should file a brief supporting his

12  case.

13           MR. DREEBEN:  But getting in the door, Mr.

14  Chief Justice, is one of the absolutely critical things.

15           CHIEF JUSTICE ROBERTS:  So is your answer,

16  yes, that that's a felony?

17           MR. DREEBEN:  If somebody pays me --

18           CHIEF JUSTICE ROBERTS:  No, no.  That's the

19  quid -- that's the quid side of it.

20           MR. DREEBEN:  Yes.

21           CHIEF JUSTICE ROBERTS:  I'm talking about

22  the pro side in the quid pro quo.

23           MR. DREEBEN:  Taking a meeting, yes, I think

24  taking a meeting is absolutely government action.

25           JUSTICE KENNEDY:  So if -- so if the

31

1   President gives special access to high-dollar donors to

2   have meetings with government officials, that is a

3   felony?

4            MR. DREEBEN:  Certainly not, Justice

5   Kennedy.  And I --

6            JUSTICE KENNEDY:  Why certainly not?

7            MR. DREEBEN:  Because the critical issue

8   there is whether the government can prove a quid pro

9   quo.  And now we're moving into the realm of campaign

10  contributions, where this Court has given very strict

11  guidance about when a jury --

12           JUSTICE BREYER:  It's not a campaign

13  contribution.  What it is, is he takes him to lunch, and

14  an expensive lunch at that.  Okay?  Because the quid

15  side is not limited.  The government has argued

16  continuously that in for a penny, in for a pound.  Okay?

17  So we don't have the limitation on the quid side.  We

18  have a possible limitation in frame of mind.

19           And now we're looking to the quo side.  And

20  you want to remove any limitation there.  Okay?

21           Now, why do I think that's a problem?  Two

22  very fundamental reasons.  And it's not because I'm in

23  favor of dishonest behavior.  I'm against it.  And we

24  have just listed some that is dishonest.  My problem is

25  the criminal law as the weapon to cure it.  And if the

Official - Subject to Final Review

1    criminal law is the weapon that goes as far as you want,

2    there are two serious problems.  One, political figures

3    will not know what they're supposed to do and what

4    they're not supposed to do, and that's a general

5    vagueness problem.

6              And the second is, I'd call it a separation

7    of powers problem.  The Department of Justice in the

8    Executive Branch becomes the ultimate arbiter of how

9    public officials are behaving in the United States,

10   State, local, and national.  And as you describe it, for

11   better or for worse, it puts at risk behavior that is

12   common, particularly when the quid is a lunch or a

13   baseball ticket, throughout this country.

14             Now, suddenly, to give that kind of power to

15   a criminal prosecutor, who is virtually uncontrollable,

16   is dangerous in the separation of powers since.  So in

17   my mind -- right in this case, nothing to do with this

18   Petitioner, nothing to do with him, but in this case, is

19   a -- as fundamental a real separation of -- of powers

20   problem as I've seen.

21             And -- and I'm not quite certain what the

22   words are.  They won't be perfect.  They will leave some

23   dishonest conduct unprosecuted.  They won't be perfect.

24   They will put some politicians at risk.  But I'm

25   searching for those words because, as I said, this is a

1  very basic separation of powers problem for me.

2          MR. DREEBEN:  So --

3          JUSTICE BREYER:  I appreciate your help on

4  what the right words are, and I'll tell you right now if

5  those words are going to say when a person has lunch and

6  then writes over to the antitrust division and says, I'd

7  like you to meet with my constituent who has just been

8  evicted from her house, you know, if that's going to

9  criminalize that behavior, I'm not buying into that, I

10  don't think.

11          So -- so I want some words that will help

12  with what I see as as knotty and complicated and

13  difficult and basic a problem as I can think of.

14          MR. DREEBEN:  Justice Breyer, let me first

15  argue the position that I came here to argue, which is

16  that "official action" is not limited by some arbitrary

17  litmus test that was proposed by Petitioner that would

18  exclude things that he calls "access."  I don't think

19  that that's the right way to look at it.  I think that

20  the right way to look at this statute is to recognize

21  that it has multiple elements.  We're talking about

22  multiple statutes.  But the bribery offense has very

23  similar elements.

24          You first have to decide whether someone is

25  engaging in an "official act."  Merely going to lunch is

1    not engaging in an "official act."  There are

2    opportunities to engage --

3              JUSTICE BREYER:  No, no one said it is.  The

4    lunch with the Chateau Lafite wine happens to be the

5    quid, and -- and that's worth, like, a thousand dollars,

6    or 500, anyway.  I don't go to those restaurants

7    anymore.

8              (Laughter.)

9              MR. DREEBEN:  Justice Breyer --

10             JUSTICE BREYER:  But -- but you understand

11   that --

12             MR. DREEBEN:  -- I -- I don't -- I don't

13   go --

14             JUSTICE BREYER:  -- side.  It's the other

15   side of the equation.

16             MR. DREEBEN:  I understand, Justice Breyer.

17   But what -- I would think it would be helpful for the

18   Court if I could lay out the multiple elements that are

19   at issue here because "official act" does not have to do

20   all the work.  You do have to have somebody engaged in

21   their official capacity.  You then have to have

22   something that they do within their range of official

23   duties, which going to lunch is not going to be.

24             Third, you need a quid pro quo, which means

25   that the government is going to have to show that the

1    person allowed themselves to be influenced in their

2    conduct by the thing of value that they received, which

3    is to say that somebody is basically saying, I'm going

4    to make a referral over to another agency for you only

5    if you buy me lunch.  That is not honorable behavior,

6    and there are --

7              JUSTICE BREYER:  Of course it isn't.

8              MR. DREEBEN:  -- many regulations that carve

9    out permissible gift situations and create the fourth

10   element issue that I think is an important protection,

11   which is mens rea.

12             JUSTICE KENNEDY:  But the problem is, and as

13   you set forth in your brief correctly, you can imply an

14   agreement over time.  You can imply a contract over

15   time.  And if the lunch takes place first and there's --

16   there's no precondition on the lunch, but after the

17   lunch there is wink-wink, nod-nod, and the contact takes

18   place, it's clear in the standard criminal law that

19   there is a conspiracy there.

20             MR. DREEBEN:  So I agree with you --

21             JUSTICE KENNEDY:  We're in agreement.

22             MR. DREEBEN:  I do agree with you, Justice

23   Kennedy.  I think that's exactly the position that Your

24   Honor's opinion in Evans, the separate concurrence,

25   explained as a proper means of administering the quid

Official - Subject to Final Review

1    pro quo requirement as an intent to issue in a criminal

2    case.  There is a very critical protection here.  It's a

3    requirement of showing something beyond a reasonable

4    doubt to a jury.  And if you have ordinary conduct

5    that's fully disclosed and in accordance with

6    regulations which do strictly limit when people can

7    receive lunches --

8              JUSTICE ALITO:  I don't see what the

9    relevance of those regulations is.  You say -- you say

10   there were certain safe harbors created by Federal

11   regulations.  Those apply to Federal employees and

12   Federal officers.  What do they have to do with a

13   Governor of a State or a State employee?

14             MR. DREEBEN:  Well, they don't, Justice

15   Alito.  This case has been litigated on the submission

16   that Section 201 informed the meeting of "official

17   action" for purposes of the Hobbs Act and the honest

18   services statute.  And as a result, the parties have

19   engaged very heavily on the effect on Federal officials.

20   And I think that Justice Breyer's question was primarily

21   directed at them.

22             I do think that there are different issues

23   that arise with respect to State officials, but the mens

24   rea requirements that I've been talking about are going

25   to be fully applicable --

1          JUSTICE BREYER:  Yeah, but how -- but you're

2     asking --

3          JUSTICE KENNEDY:  But then this -- this

4     doesn't answer Justice Breyer's basic question and ours.

5     You're going to tell the Senators, the officials with

6     the lunches, that, don't worry.  The jury has to be

7     convinced beyond a reasonable doubt, and that's tough.

8              (Laughter.)

9          MR. DREEBEN:  Well --

10          JUSTICE KENNEDY:  That was your answer.

11     That was your answer.

12          MR. DREEBEN:  Justice Kennedy, I do think

13     that the requirements of the criminal law in proving

14     something by beyond a reasonable doubt are a substantial

15     --

16          JUSTICE BREYER:  What is it they're trying

17     to prove?  Now, of course, this is a State case, not a

18     Federal case.  It's a State official -- it's a Federal

19     law but a State official.  I don't know.  I've only been

20     peripherally involved in political campaigns, but my

21     peripheral convinces me that a candidate will go out and

22     he'll have lunch with hundreds of people, hundreds.

23     Everybody wants to give him lunch.  Great.  And -- and

24     he wants to meet as many people as possible.  He wants

25     to be friendly.  He might receive a raincoat.  He might

1    receive all kinds of things.  And at some point, it

2    becomes very dishonest.

3         MR. DREEBEN:  So --

4         JUSTICE BREYER:  But that's a matter for

5    campaign laws.

6         Wait.  Now, I've also been involved in the

7    Justice Department.  And we would receive many, many

8    letters in the antitrust division.  Have you looked into

9    such and such?  I know perfectly well that that Senator

10   just wants to go back to the constituent and say, see, I

11   did my best.  That's all.

12        Now, you're saying to the jury, take those

13   facts I just gave you, and you look into the state of

14   mind -- the state of mind of which the amounts being

15   given will be somewhat indicative, of which the nature

16   of the letter will be somewhat indicative, of whether he

17   writes in personal writing at the bottom will be

18   somewhat indicative, and we're going to let you 12

19   people work out what was really in that Senator's mind.

20   I say that is a recipe for giving the Department of

21   Justice and the prosecutors enormous power over elected

22   officials who are not necessarily behaving honestly.

23        And I am looking for the line.  I am looking

24   for the line that will control the shift of power that I

25   fear without allowing too much honesty through this law.

Official - Subject to Final Review

1    You know, other laws exist on the other side.

2              MR. DREEBEN:  Well, Justice --

3              JUSTICE BREYER:  That -- that's what I want

4    your view on.

5              MR. DREEBEN:  Justice Breyer, I'm going to

6    push back, because I think that the line that Petitioner

7    has urged is one that is a recipe for corruption, not a

8    recipe for drawing a safe harbor for public officials.

9              What he has basically urged the Court to

10   hold is that paying for access, if somebody does not put

11   a thumb on the scale of decision -- if I, for example,

12   tell the criminal division, take the meeting, make

13   whatever recommendation is in your best judgment, just

14   take the meeting, I can take money for that.  And I

15   think the message that would be sent, if this Court put

16   its imprimatur on a scheme of government in which public

17   officials were not committing bribery when all they did

18   was arrange meetings with other governmental officials,

19   without putting, in his metaphorical way, a thumb on the

20   scales of the ultimate decision, would send a terrible

21   message to citizens.  What --

22             JUSTICE ALITO:  Well, what I think we're

23   looking for is some limiting principle.  Now, you -- you

24   started to say something about campaign contributions --

25             MR. DREEBEN:  Correct.

1          JUSTICE ALITO:  -- and I know that this case

2    doesn't involve campaign contributions.  But certainly a

3    campaign contribution can be the quid, can it not?

4          MR. DREEBEN:  Certainly.

5          JUSTICE ALITO:  All right.  Well, gaining

6    access by making campaign contributions is an everyday

7    occurrence.  And maybe it's a bad thing, but it's very

8    widespread.  How does it -- how does that play out?

9          MR. DREEBEN:  So, Justice Alito, gaining

10   access and ingratiation and gratitude as a result of

11   campaign contributions is not a crime.  When it's done

12   as a quid pro quo, it is.  And that is not the --

13         JUSTICE BREYER:  That's --

14         MR. DREEBEN:  That is not the --

15         JUSTICE BREYER:  That's what I want, your

16   view.

17         MR. DREEBEN:  That is not my view, Justice

18   Breyer.

19         JUSTICE BREYER:  But, I mean --

20         JUSTICE ALITO:  Mr. Dreeben, if I could just

21   follow up on that.

22         If a -- a Senator writes to a Federal agency

23   and says, this union or this company is, you know,

24   critical to the economy of my State, and, by the way --

25   he doesn't say this, but, by the way, they are the

1   biggest contributors to his campaign -- would you please

2   meet with them?  What would not make that a crime?  The

3   fact that the jury might not find beyond a reasonable

4   doubt that the reason why he was urging this meeting was

5   because these people, this entity, happened to be a very

6   big supporter?  That would be the only thing separating

7   lawful from unlawful conduct there?

8          MR. DREEBEN:  Well, let -- let me say two

9   things in response to that.  First, this Court has

10  addressed that very issue in the McCormick case.  And it

11  is established that merely taking favorable action at or

12  around the time of the receipt of campaign contributions

13  is not sufficient to show a quid pro quo and is not a

14  crime.

15         Nobody doubts that if there's a quid pro quo

16  for a vote, something that I think Mr. Francisco is

17  prepared to concede is "official action," although I'm

18  not sure why since it doesn't personally exercise

19  sovereign power if a legislator casts vote as a

20  dissenting vote from a majority action.  But nobody

21  disputes that that is a crime.  Therefore, this Court

22  has already carved out evidentiary and instructional

23  safeguards that prevent against a jury inferring a quid

24  pro quo merely from the coincidence of timing.

25         But I want to come back to something that is

Official - Subject to Final Review

1   even more fundamental, and that is the role of the First

2   Amendment in this case.  Because Petitioner has sought

3   to wrap himself in the mantle of the First Amendment,

4   probably because the gifts that he received have nothing

5   to do with the First Amendment; they have to do with

6   personal loans and luxury goods.

7            This is not a case about campaign

8   contributions.  But when campaign contributions are at

9   issue, he relies very heavily on Citizens United while

10  ignoring a critical piece of Citizens United.

11           This Court, in Citizens United, looked back

12  to the circumstances that prompted the Federal Election

13  Campaign Act in 1972, and those involve circumstances

14  that were delineated in the Buckley decision in the

15  court of appeals.

16           And the Court specifically cited to those

17  practices.  And what were those practices?  They

18  involved the American milk producers paying $2 million

19  in campaign contributions, spread out among a variety of

20  committees, to get a meeting at the White House.  That's

21  all they did.  They said, in order to gain a meeting

22  with White House officials on price supports, they paid

23  that money.

24           Other corporate executives testified that

25  paying money was a calling card, something that would

1    get us in the door and make our point of view heard.

2    And this Court said, on page 356 of the Citizens United

3    opinion, "The practices Buckley noted would be covered

4    by the bribery laws, CEG 18 U.S.C. 201, if a quid pro

5    quo arrangement were proved."

6            Now, of course, it's very difficult to prove

7    a quid pro quo arrangement, and that's why there are

8    campaign finance limitations on contributions to

9    candidates.  But the Court had no doubt that paying for

10   access was a criminal violation.  And so --

11           CHIEF JUSTICE ROBERTS:  So --

12           MR. DREEBEN:  And that's what --

13           CHIEF JUSTICE ROBERTS:  -- if you have a

14   governor whose priority is jobs for his State, and

15   there's a CEO who's thinking about locating a plant in

16   his State, but he can only do it, he says, if he gets

17   tax credits from the State.

18           So the governor is talking to him, and he

19   says, look, why don't you come down to my, you know,

20   trout stream and we'll go fishing and we'll talk about

21   this.  And the governor does that.  He has a nice day

22   fishing for trout, and they talk about whether they can

23   get tax credits, deferred taxes if the CEO opens his

24   plant in the State.  Now, is that a felony, because

25   he's --

Official - Subject to Final Review

1           MR. DREEBEN:  I --

2           CHIEF JUSTICE ROBERTS:  -- accepted an

3    afternoon of trout fishing, and he discussed official

4    business at that time?

5           MR. DREEBEN:  I don't think so, Mr. Chief

6    Justice, but if you change the hypothetical and said

7    instead of an afternoon of trout fitting -- fishing,

8    I'll fly you out to Hawaii and you and your family can

9    have a vacation, and during that time we can go over my

10   policy --

11          CHIEF JUSTICE ROBERTS:  But I thought -- I

12   didn't think the government put any weight on the amount

13   of the quid; in other words, you know -- okay.  I don't

14   know how much an afternoon of trout fishing is worth,

15   but I -- I gather you get -- you can be charged for that

16   and -- and pay for it.

17          I thought that didn't matter.  I thought it

18   was whether he was engaged in an "official act" under

19   circumstances in which a jury could find he did it

20   because of the gift.

21          MR. DREEBEN:  Yes.

22          CHIEF JUSTICE ROBERTS:  And -- and so if all

23   he's doing is talking about ways to get jobs for

24   Virginia, and he's talking with the person who's going

25   to make that decision from the private sector, based in

1    part on whether or not he gets, you know, tax credits,

2    it would seem to me that under your definition, that

3    governor is guilty of a felony.

4            MR. DREEBEN:  I'm not sure that he is guilty

5    of a felony.  But the reason why I changed the

6    hypothetical to involve a larger quid is because the

7    implications of carving something out from "official

8    action" mean that it can be sold, and that it's lawful

9    to be sold.  And when you change the trout fishing to a

10   trip to Hawaii, it becomes more nefarious, and the

11   message that it sends to citizens is --

12           JUSTICE BREYER:  But that's the point.  You

13   see, what -- exactly what the Chief Justice asked.

14   What's the lower limit, in the government's opinion, on

15   the quid?  What?  Tell me right now.  What -- if you're

16   going to say $10,000, okay, I feel quite differently

17   about this.  If you will say an afternoon of trout

18   fishing or et cetera, then I feel quite differently.

19   It's pretty hard to see the conduct being honest if you

20   exempt the campaign contributions and put it up

21   somewhere.  But I didn't think that was the government's

22   position.

23           MR. DREEBEN:  It's not the government's --

24           JUSTICE BREYER:  What is the government's

25   position -- what -- you tell me I'm wrong, in for a

Official - Subject to Final Review

1    penny, in for a pound.  You tell me right now it is not

2    the government's position that the trout fishing

3    afternoon is sufficient to be a -- a quid.  If you say

4    that, I'll feel differently about the case.

5              (Laughter.)

6              MR. DREEBEN:  It's tempting, Justice Breyer,

7    but I'm not going to --

8              JUSTICE BREYER:  Exactly.

9              MR. DREEBEN:  -- exempt from the corruption

10   laws --

11             JUSTICE BREYER:  Okay.

12             MR. DREEBEN:  -- certain types of quids.

13   But --

14             JUSTICE BREYER:  But now --

15             MR. DREEBEN:  -- Justice Breyer, you do need

16   to run this through all the elements of the offense.  I

17   think what Petitioner is -- is saying, and I think some

18   of the Court's hypotheticals are suggesting the only

19   thing that really you could possibly do to remedy this

20   issue is to shrink the definition of "official action"

21   with no textual basis in 201, nor really, I think, any

22   common sense basis in the way that government actually

23   operates --

24             JUSTICE BREYER:  You tell me -- that's why I

25   asked you at the beginning.  And you -- in order to

Official - Subject to Final Review

47

1    be -- you say you're going to push back, and then you

2    complained about their definition.  If I thought their

3    definition was so perfect, I wouldn't have asked you.

4    And -- and it's -- it's exactly -- you do -- you tell me

5    how to do this.  And I'm not -- you say it sends a

6    terrible message.  I'm not in the business of sending

7    messages in a case like this.  I'm in the business of

8    trying to figure out the structure of the government.

9    And that's part of Separation of Powers, and I expressed

10   my concern.

11              MR. DREEBEN:  So I think --

12              JUSTICE BREYER:  I dissented in -- in

13   Citizens United, so whatever that said there, but --

14              (Laughter.)

15              JUSTICE BREYER:  The -- the -- but the point

16   is the one I raised at the beginning that every single

17   one of us has raised.  We're worried about -- because

18   like any other organization, the prosecutors too can be

19   overly zealous.  That can happen.  And so we need some

20   protection on both sides, even though the line won't be

21   perfect.  And it will fail to catch some crooks.  And it

22   will -- I mean, I understand that.  And -- and I want to

23   know your view.  And it doesn't even -- it helps a

24   little, but not a lot, to say, well, meetings.

25              MR. DREEBEN:  So --

1           JUSTICE BREYER:  That's too specific.  I

2    want to know what your view is as to the language we

3    write in discussing the line.

4           MR. DREEBEN:  Well, I don't think you and I

5    agree on where the line should be, Justice Breyer.  So

6    I -- I can't write language that is going to satisfy

7    you.  You weren't even satisfied with Petitioner's

8    language, which requires that there be influence on some

9    other governmental decision.  You suggested you thought

10   that was too broad.

11          JUSTICE BREYER:  No, no, no.  Well, yeah,

12   yeah, yeah, yeah.

13          MR. DREEBEN:  You did suggest it.

14          JUSTICE BREYER:  I did --

15          (Laughter.)

16          MR. DREEBEN:  I think that it's too narrow.

17   I think that if the Court is going to reject the

18   government's submission, which is that when the governor

19   calls his Secretary of Health and says, take the meeting

20   with my benefactor, he doesn't disclose it's his

21   benefactor.  Take the meeting so that that person can

22   have the preferential opportunity that other citizens

23   who do not pay will have to make his case before you.  I

24   think that is "official action."

25          Petitioner says it's not "official action"

1  unless he further sends the message, which I think on

2  the facts of this case was sent, he's trying to

3  influence the ultimate outcome.

4         If the Court is going to reject the

5  government's position in this case, then I think that a

6  fallback position for the government is when you have an

7  indisputed "official action," such as will the

8  universities of Virginia study a particular product, or

9  will the Tobacco Commission fund it, then when a public

10  official takes action to direct that decision, to

11  influence that decision, or to advance his benefactor's

12  interests with respect to that decision, that

13  constitutes the crime of bribery.

14         CHIEF JUSTICE ROBERTS:  There -- there is --

15         MR. DREEBEN:  Now --

16         CHIEF JUSTICE ROBERTS:  Given the difficulty

17  that we're having in settling on what these words in the

18  statute mean, there is a -- an argument in the

19  Petitioner's brief that you have responded to in yours

20  that the statute is unconstitutionally vague.

21         MR. DREEBEN:  I -- I do not think it is

22  unconstitutionally vague.  First of all, we're talking

23  here about multiple statutes.  We're talking about Hobbs

24  Act extortion, which this Court previously construed in

25  both McCormick and Evans to be perfectly valid upon the

Official - Subject to Final Review

1    proof of a quid pro quo when the official asserts that

2    his action will be controlled by a -- a thing of value

3    that he has received.

4            And now we're talking about the question of

5    what constitutes "official action" for the purposes of a

6    common law crime that goes back centuries and was

7    incorporated into the Hobbs Act.

8            We're also talking about the honest-services

9    statute, which this Court in Skilling just six years ago

10    determined could be construed --

11           CHIEF JUSTICE ROBERTS:  Well, yeah.  "Could

12    be construed."  I mean, there were, what, three votes to

13    find it unconstitutional?  And the others say, well, no,

14    because you can narrow it in this way to the core

15    definition of bribery.  And now maybe the -- the

16    experience we've had here, and the difficulty of coming

17    up with clear enough instructions suggests that the

18    caution the Court showed at that point was ill-advised.

19           MR. DREEBEN:  Well, I think it would be

20    absolutely stunning if this Court said that bribery and

21    corruption laws, which have been on the books since the

22    beginning of this nation, and have been consistently

23    enacted by Congress to combat both Federal, State, and

24    local corruption --

25           JUSTICE KENNEDY:  Would it be --

1          CHIEF JUSTICE ROBERTS:  And --

2          JUSTICE KENNEDY:  -- absolutely stunning to

3  say that the government has given us no workable

4  standard?

5          MR. DREEBEN:  Well, we have given you a

6  workable standard.  It's the standard that comes from

7  this Court's 1914 decision in Birdsall, where the Court

8  said that things that government officials do under a

9  bribery statute much like this are covered as official

10  action, and they're not limited to things that --

11          JUSTICE KENNEDY:  Perhaps what you're

12  talking about is how evil the conspiracy is.  It's not

13  evil to -- to fish or to have a bottle of wine, but it

14  is evil if you up the ante.  Is that -- is that what

15  you're saying?

16          MR. DREEBEN:  I think what I'm trying to

17  say, Justice Kennedy, is that it's going to be extremely

18  difficult for anyone to really believe that you could

19  buy a Governor's position on a multimillion-dollar tax

20  support for an afternoon of trout fishing.  And that's

21  why those cases don't get brought.  No one thinks about

22  them.  It's not really even clear there is a quid pro

23  quo for --

24          JUSTICE KAGAN:  Can I ask you a narrower

25  question, Mr. Dreeben?

1              So one of the "official acts" here -- I'll
2    just read it to you.  It's allowing Jonnie Williams to
3    invite individuals important to Star Scientific's
4    business to exclusive events at the Governor's Mansion.
5              MR. DREEBEN:  Yes.
6              JUSTICE KAGAN:  So that's essentially
7    hosting a party and allowing Mr. Williams to invite some
8    people.  And why does that -- why is that an "official
9    act," in your view?
10             MR. DREEBEN:  So, Justice Kagan, it wasn't
11   hosting an official party.  We're talking about here two
12   events.  One was a product launch hosted at the
13   Governor's Mansion where the Governor is basically
14   giving his credibility to a brand-new product.  And the
15   invitations were critical to Jonnie Williams' plan to
16   sign up the universities to do the studies.  He got to
17   pick --
18             JUSTICE KAGAN:  So here's, I guess -- I
19   mean, I guess, my question is this:  The -- the
20   "official act," the statute, the definition, I mean,
21   requires that there be some particular matter, cause,
22   suit, proceeding, or controversy, correct?
23             MR. DREEBEN:  Yes.
24             JUSTICE KAGAN:  And if I understand the
25   theory of this case, the matter, suit, cause,

Official - Subject to Final Review

1    proceeding, or controversy here is the attempt to get

2    the University of Virginia to do clinical studies of

3    this product; is that correct?

4             MR. DREEBEN:  It's narrower than our whole

5    scope of the charge, but it's essentially correct.

6             JUSTICE KAGAN:  That's the gravamen of the

7    thing?

8             MR. DREEBEN:  Correct.

9             JUSTICE KAGAN:  So if you had just -- if --

10   if the indictment, and then the instructions that were

11   based on the indictment, had said the "official act" is

12   getting the University of Virginia to do clinical

13   studies, right, that reads very differently from the way

14   this indictment was structured.  Because what this

15   indictment does is it takes a lot of different pieces of

16   evidence that might relate to that "official act" and

17   charges them as "official acts" themselves, so that the

18   party becomes an "official act" or calling somebody just

19   to talk about the product becomes an "official act."  Do

20   you see what I mean?

21            I mean, you know, this might have been

22   perfectly chargeable and instructable, but I guess

23   I'm -- I'm troubled by these particular charges and

24   instructions, which seems to make every piece of

25   evidence that you had an "official act," rather than

1    just saying the "official act" was the -- was the

2    attempt to get the University of Virginia to do

3    something that they wouldn't have done otherwise.

4            MR. DREEBEN:  So, Justice Kagan, what the

5    crime was here was the Governor accepting things of

6    value in return for being influenced and taking

7    "official actions" to legitimize, promote, and secure

8    research studies for Anatabloc and Star's products.

9    That's at Supplemental JA 14.

10           It then alleges that he would do this as

11   opportunities arose in the course of his official

12   actions.  And because he's the Governor and he has a

13   tremendous amount of influence throughout the

14   government, he appoints all the board of visitors of VCU

15   and UVA.  He sets the budget.  They know that he's an

16   important guy.  He has lots of opportunities to do this

17   in different ways over time.

18           And if you look at the pattern of what he

19   did, directing people to meet with Star's

20   representatives, arranging events at the mansion in

21   which Star could bring together its chosen guest list,

22   the doctors who it wanted to influence with the Star

23   people who were trying to influence it, the Governor is

24   taking every step he can do short of saying to UVA, do

25   the studies, which his chief counsel told him would be

1    inappropriate and wasn't going to do.

2            So I -- I think that if you look at the

3    indictment the way that it's actually structured, it

4    talks about a person who, as opportunities arose, was

5    going to engage in "official acts."  This is a theory of

6    corruption that Justice Sotomayor's opinion in Ganim in

7    the Second Circuit validated, and it was cited in

8    Skilling as a perfectly valid theory of corruption.

9            And, therefore, the individual "official

10   acts" really form a composite window into Petitioner's

11   mind.  Did he intend to allow his official conduct to be

12   controlled by the things of value that he received?  And

13   taking them all together, even if the Court has trouble

14   with any individual one, they allowed a rational jury to

15   inference that, indeed, he did.

16           And the only way that Petitioner could win,

17   if you agree with me on the sufficiency issue, is if you

18   conclude that jury instructions must exempt certain

19   types of official actions, like directing your Secretary

20   of Health to take a meeting, which is a very kind of

21   significant event in the life of a cabinet member and a

22   governor, or hosting an event at the mansion, can't

23   possibly count, because it somehow should be viewed as

24   social, when, in fact, what the Governor is doing is

25   allowing his benefactor to get all the people in the

1    room who he wants to influence to do the studies.

2              So in my view, there was nothing wrong -- if

3    I can complete the sentence -- in the way that the

4    indictment structured the crime in this case.  The

5    "official acts" were exemplary.  They were proved, and

6    the jury could properly find them.

7              Thank you.

8              CHIEF JUSTICE ROBERTS:  Thank you, counsel.

9              Mr. Francisco, five minutes remaining.

10           REBUTTAL ARGUMENT OF NOEL J. FRANCISCO

11                ON BEHALF OF PETITIONER

12             MR. FRANCISCO:  Thank you, Mr. Chief

13   Justice.

14             I have three basic points I would like to

15   make.

16             First, I'd like to start out with the

17   government's argument that a lot of the problems with

18   its theory are solved by the quid pro quo requirement.

19   Well, in fact, the gratuity statute, the Federal

20   gratuity statute, has the exact same "official act"

21   requirement, but no quid pro quo requirement at all.

22             So what that means is that if you take

23   somebody to a fancy lunch with a -- I can't remember the

24   name of the bottle of wine you mentioned, Justice

25   Breyer, but if you took them to that fancy lunch to

Official - Subject to Final Review

1  thank them for referring you to a meeting with a

2  mid-level staffer, even if there was no suggestion at

3  all that you were going to do anything other than call

4  that staffer and say, hey, can you take a meeting with

5  this guy, hear him out, and exercise your independent

6  judgment, that would be a violation of the Federal

7  gratuity statute.

8          And, indeed, under the government's broad

9  theory that anything within the range of official duties

10  counts, that means that if you took the person out to

11  that lunch as thanks for giving you a tour of the

12  Capitol Building, you would likewise have violated the

13  Federal gratuity statute, because there, there is no

14  quid pro quo requirement at all.

15          Point two, Justice Breyer --

16          JUSTICE SOTOMAYOR:  There is a difference

17  between someone saying, thank you for a decision you

18  made independent of the gift -- that's the Sun Growers

19  case -- and someone buying you an expensive lunch and

20  saying, I'm paying for this lunch, but make sure I get a

21  tour.  You don't see the difference?

22          MR. FRANCISCO:  Not under the Federal

23  gratuity statute, Your Honor, because the Federal

24  gratuity statute is meant to prohibit thanking somebody

25  for giving you an "official act."  And so if an

1    "official act" is, in fact, a tour of the Capitol

2    Building or a meeting with a staffer, then you have, in

3    fact, violated the Federal gratuity statute when you

4    take them to lunch as a thanks for that particular act.

5              Second point, Justice Breyer, in trying to

6    figure out the right verbal formulation, the first point

7    I'd like to make is, if we can't figure out a proper

8    verbal formulation, then I think there are some ver

9    serious vagueness problems with the statute --

10             JUSTICE BREYER:  It's Birdsall.

11             JUSTICE SOTOMAYOR:  You --

12             JUSTICE BREYER:  It's Birdsall.  Look, I

13   can -- I've read the Brown Commission Report.  I've read

14   the Model Penal Code.  I've read all these efforts to

15   get language.  And I've looked at the present statute.

16   And I think I can limit that because the statute,

17   itself, seems to cover things like voting and contracts,

18   et cetera.  But it's also true that a person who tries

19   to influence those things has committed bribery.  I

20   think that's correct.

21             MR. FRANCISCO:  And --

22             JUSTICE BREYER:  Now, my problem is with

23   Birdsall and how do we write those words so that they do

24   catch people who are doing this dishonest thing without,

25   as I've said five times, allowing the government the

1    freedom to go and do these ridiculous cases.

2              MR. FRANCISCO:  And -- and I think the D.C.

3    Circuit's en banc decision --

4              JUSTICE BREYER:  Not saying this is a

5    ridiculous one, by the way.

6              MR. FRANCISCO:  Understood, Your Honor.  I

7    think that the right answer, you start out with the D.C.

8    Circuit's decision in Valdes.  You look at that listing

9    of words --

10             JUSTICE BREYER:  Uh-huh.

11             MR. FRANCISCO:  -- question, matter, suit,

12   cause proceeding.  And those are actual decisions that

13   the government makes, the government as a whole, as a

14   sovereign.  And then you say, are you making a decision

15   on that, if you're the final decisionmaker, or if you're

16   not the final decisionmaker, but because of your

17   official power, you have the -- the ability and the

18   authority to influence other decision-makers, then

19   you're -- are you doing that?  Here are two

20   fundamental --

21             JUSTICE GINSBURG:  What do you say to

22   Mr. Dreeben's argument that if we read this statute as

23   you are urging, then every government official can say,

24   you want to have a meeting?  Pay me a thousand dollars.

25   The corruption that's inherent in the position that says

1    it's okay to facilitate a meeting, it's okay to say,

2    I'll do it for you if you pay me a thousand dollars.

3    That's your view, that that would be okay?

4            MR. FRANCISCO:  Your Honor, and, frankly,

5    this was leading to my third point, which is, if there

6    is absolutely no way that -- if there's no indicia that

7    you're actually trying to influence the outcome, and it

8    really is just a meeting, yes.  But that reflects the

9    fact that these broad and vague statutes are not

10   comprehensive codes of ethical conduct.  There are lots

11   of other statutes that would prohibit precisely what you

12   are suggesting, Justice O'Connor, and you don't have to

13   interpret --

14           JUSTICE GINSBURG:  That hasn't happened in

15   quite some time.

16           (Laughter.)

17           MR. FRANCISCO:  Justice Ginsburg.  I am

18   very, very, very sorry.

19           (Laughter.)

20           MR. FRANCISCO:  Justice Ginsburg, my

21   apologies.

22           There are lots of other statutes that would

23   prohibit that precise conduct, and you don't need to

24   take statutes like the Hobbs Act and honest-services

25   statute.

Official - Subject to Final Review

61

1          JUSTICE KAGAN:  Well, what would --

2     Mr. Francisco, just take Mr. Dreeben's own example,

3     which is the example of somebody -- he's running a

4     business, and he's taking $5,000 at a pop every time he

5     arranges a meeting with the criminal division for

6     somebody.

7          MR. FRANCISCO:  Sure.  There is a statute

8     that prohibits supplementing your public salary with

9     private money.  So if you're essentially taking outside

10    money for the performance of your official duties,

11    that's illegal.  That was discussed in the Sun-Diamond

12    case.

13          There is another statute that -- that

14    prohibits you from doing any -- taking anything from

15    anybody whose interests could be substantially affected

16    by the performance or nonperformance of your duties.  So

17    that's another one.  It would prohibit -- that would

18    prohibit it.

19          There is another provision of this bribery

20    statute that prohibits you from taking any action, not

21    just "official action" but any action in violation of

22    your official duties.  So I think that might --

23          JUSTICE SOTOMAYOR:  Why aren't they any less

24    vague?

25          MR. FRANCISCO:  Excuse me?

1          JUSTICE SOTOMAYOR:  Why aren't they any less

2     vague?  And what you're saying is that holding a

3     meeting, taking a phone call, having a party is not

4     illegal, that that is something that you're entitled to

5     do.  So why would all those statutes be any less --

6          MR. FRANCISCO:  They may well be in certain

7     circumstances, but I think that the ones that are simply

8     saying -- for example, the civil service statutes that

9     simply say, you can't take anything from anybody who is

10    a covered person.  That's not vague.  It just says that

11    you can't take anything from anybody who is in your job.

12          Most Federal government officials are very

13    familiar with that.  That's why you really just don't

14    take gifts from anyone.  The problem here is that we had

15    a State regime that was much less stringent than the

16    Federal regime, and the government wanted to use the

17    open-ended Hobbs Act and honest-services statute to fill

18    that gap in what they perceived is the State law.

19          I would respectfully submit that that is an

20    inappropriate use of Federal power.

21          Thank you, Mr. Chief Justice.

22          CHIEF JUSTICE ROBERTS:  Thank you, counsel.

23          Mr. Dreeben, could I invite you to return to

24    the lectern?  Our records reflect that this was your

25    one-hundredth oral argument before the Court.  You are

1   the second person to reach that rare milestone this

2   century.

3           I distinctly recall your first argument in

4   January of 1989.  Throughout your career, you have

5   consistently advocated positions on behalf of the

6   United States in an exemplary manner.

7           On behalf of the Court, I extend to you our

8   appreciation for the many years of advocacy and

9   dedicated service during your tenure in the Solicitor

10  General's Office and as an officer of this Court.

11          We look forward to hearing from you many

12  more times.  Thank you.

13          The case is submitted.

14          MR. DREEBEN:  Thank you.

15          (Whereupon, at 11:04 a.m., the case in the

16  above-entitled matter was submitted.)

17

18

19

20

21

22

23

24

25

| A | | | | |
|---|---|---|---|---|

**A**

**a.m** 1:13 3:2
  63:15
**ability** 29:3
  59:17
**able** 7:8
**above-entitled**
  1:11 63:16
**absence** 10:11
**absolutely** 16:23
  16:25 17:1
  30:14,24 50:20
  51:2 60:6
**accept** 12:11
**accepted** 44:2
**accepting** 8:15
  54:5
**access** 3:18 5:18
  28:18 29:18
  31:1 33:18
  39:10 40:6,10
  43:10
**act** 4:5 8:9 9:8
  9:16,20,20
  11:17,19 13:13
  14:10 15:23
  20:17,19 21:13
  21:19 22:3
  23:1 25:9
  26:11 27:2,6
  27:12 28:14
  33:25 34:1,19
  36:17 42:13
  44:18 49:24
  50:7 52:9,20
  53:11,16,18,19
  53:25 54:1
  56:20 57:25
  58:1,4 60:24
  62:17
**act.'** 20:10
**action** 3:11,16
  4:3,7,10 6:9,14
  7:20 12:6,8
  13:5,7 14:24
  15:3,7 16:18

19:24 20:25
21:16 22:24
23:20,22 28:17
30:24 33:16
36:17 41:11,17
41:20 45:8
46:20 48:24,25
49:7,10 50:2,5
51:10 61:20,21
61:21
**action'** 18:4
**actions** 10:21
  54:7,12 55:19
**activity** 15:22
**acts** 9:9 10:5,10
  10:11,14,23
  11:1,3 19:1
  24:18 26:24
  52:1 53:17
  55:5,10 56:5
**actual** 10:5,14
  14:6 24:9
  59:12
**addressed** 41:10
**administering**
  35:25
**administration**
  24:11
**advance** 28:16
  49:11
**advocacy** 63:8
**advocated** 63:5
**afternoon** 44:3,7
  44:14 45:17
  46:3 51:20
**agency** 35:4
  40:22
**ago** 50:9
**agree** 4:19,21
  18:17 20:2
  21:3,22 23:20
  29:6,8 35:20
  35:22 48:5
  55:17
**agreed** 5:5,8 9:5
  11:8,9 12:24
  24:6 25:3,5,10

26:15
**agreement** 10:8
  10:12 35:14,21
**ahead** 25:1
**Alito** 6:25 7:15
  8:1 36:8,15
  39:22 40:1,5,9
  40:20
**Alito's** 11:14
**alleged** 13:18
**alleges** 54:10
**allow** 55:11
**allowed** 8:3 35:1
  55:14
**allowing** 38:25
  52:2,7 55:25
  58:25
**Amendment**
  42:2,3,5
**American** 42:18
**amicus** 28:21
**amount** 44:12
  54:13
**amounts** 38:14
**Anatabloc** 54:8
**answer** 16:5
  19:12 30:15
  37:4,10,11
  59:7
**answers** 24:22
**ante** 11:15 51:14
**antitrust** 33:6
  38:8
**anybody** 26:6
  61:15 62:9,11
**anymore** 34:7
**anyway** 34:6
**apologies** 60:21
**appeal** 12:2
  29:25
**appeals** 42:15
**appeals'** 10:6
**APPEARAN...**
  1:14
**appendix** 10:18
  18:3 25:20
**applicable** 36:25

**apply** 36:11
**appoints** 54:14
**appreciate** 16:3
  16:17 33:3
**appreciation**
  63:8
**appropriate**
  16:8 24:12,14
**April** 1:9
**arbiter** 32:8
**arbitrary** 33:16
**argue** 12:17
  33:15,15
**argued** 11:9
  31:15
**argues** 3:10
**argument** 1:12
  2:2,5,8 3:3,6
  10:13 12:11
  25:14 26:4,8,8
  26:15,18,19
  27:13 28:9
  49:18 56:10,17
  59:22 62:25
  63:3
**arguments**
  26:13
**arose** 54:11 55:4
**arrange** 39:18
**arrangement**
  43:5,7
**arranges** 61:5
**arranging** 11:14
  13:7 18:24
  54:20
**articulate** 20:20
**asked** 12:13
  27:24 28:2
  45:13 46:25
  47:3
**asking** 27:6 37:2
**asks** 3:13
**assert** 5:3
**asserts** 50:1
**assessing** 8:12
**assistant** 16:15
**assume** 12:20

**assuming** 9:18
**attempt** 8:7 9:20
  16:7,10 17:5
  19:15,15 20:3
  23:16 28:16
  53:1 54:2
**attending** 18:25
**authority** 4:14
  4:15,22,22
  59:18
**avoid** 12:8
**award** 5:20 16:1

**B**

**B** 7:3,4
**back** 11:13
  12:12 14:21
  19:13 38:10
  39:6 41:25
  42:11 47:1
  50:6
**bad** 40:7
**banc** 59:3
**baseball** 32:13
**based** 44:25
  53:11
**basic** 33:1,13
  37:4 56:14
**basically** 35:3
  39:9 52:13
**basis** 25:9 46:21
  46:22
**beer** 22:1
**beginning** 46:25
  47:16 50:22
**behalf** 1:15,18
  2:4,7,10 3:7
  15:13 20:22
  22:9 28:10
  56:11 63:5,7
**behaving** 32:9
  38:22
**behavior** 31:23
  32:11 33:9
  35:5
**behind-the-sc...**
  18:7

believe 51:18
benefactor
    48:20,21 55:25
benefactor's
    49:11
benefactors 12:7
best 13:17 16:19
    20:16,19 38:11
    39:13
better 32:11
beyond 36:3
    37:7,14 41:3
big 41:6
biggest 41:1
billion-dollar
    6:6
Birdsall 11:24
    19:23 20:1
    51:7 58:10,12
    58:23
bit 7:1 25:15
board 54:14
books 50:21
bottle 22:1
    51:13 56:24
bottom 38:17
Branch 32:8
branches 18:9
brand-new
    52:14
Breyer 14:20
    15:11 16:1,10
    16:14,22,24
    17:1,4,9,12,17
    17:21 18:1,10
    18:14,19 19:3
    19:6,8,23 20:5
    20:12 21:4,12
    31:12 33:3,14
    34:3,9,10,14
    34:16 35:7
    37:1,16 38:4
    39:3,5 40:13
    40:15,18,19
    45:12,24 46:6
    46:8,11,14,15
    46:24 47:12,15

48:1,5,11,14
    56:25 57:15
    58:5,10,12,22
    59:4,10
Breyer's 23:5
    36:20 37:4
bribe 13:18
bribed 5:25
bribery 3:11
    22:24 33:22
    39:17 43:4
    49:13 50:15,20
    51:9 58:19
    61:19
brief 28:21 29:2
    30:8,11 35:13
    49:19
bring 54:21
broad 15:12
    48:10 57:8
    60:9
brought 51:21
Brown 14:22
    58:13
Buckley 42:14
    43:3
budget 54:15
Building 57:12
    58:2
bully 4:21
Bush 28:23,25
business 44:4
    47:6,7 52:4
    61:4
buy 22:11 35:5
    51:19
buying 22:11
    33:9 57:19

_____
C

C 2:1 3:1
cabinet 55:21
cajole 20:23
call 20:9 23:4
    29:25 32:6
    57:3 62:3
called 6:19

calling 23:6
    42:25 53:18
calls 23:9 28:15
    30:9 33:18
    48:19
campaign 31:9
    31:12 38:5
    39:24 40:2,3,6
    40:11 41:1,12
    42:7,8,13,19
    43:8 45:20
campaigns
    37:20
candidate 37:21
candidates 43:9
capacity 34:21
Capitol 57:12
    58:1
card 42:25
career 63:4
carve 35:8
carve-out 28:13
carved 41:22
carving 45:7
case 3:4,22,22
    3:24,24 4:13
    8:11 10:8,9,25
    11:7,24 13:15
    14:3,4 15:3,9
    15:15 16:9
    17:10,14,15,23
    18:23,24 21:9
    21:15 25:5
    26:3 28:21
    29:25 30:8,12
    32:17,18 36:2
    36:15 37:17,18
    40:1 41:10
    42:2,7 46:4
    47:7 48:23
    49:2,5 52:25
    56:4 57:19
    61:12 63:13,15
cases 14:16 21:7
    51:21 59:1
casts 41:19
catch 47:21

58:24
categorical
    28:13
cause 13:19
    52:21,25 59:12
caution 50:18
CEG 43:4
centuries 50:6
century 63:2
CEO 43:15,23
certain 14:19
    32:21 36:10
    46:12 55:18
    62:6
certainly 10:25
    22:4 31:4,6
    40:2,4
cetera 16:2
    45:18 58:18
change 6:25
    44:6 45:9
changed 45:5
charge 12:11
    53:5
chargeable
    53:22
charged 29:18
    44:15
charges 53:17
    53:23
Chateau 34:4
chief 3:3,8 13:6
    13:15 14:7
    23:3 24:8 28:5
    28:7,11,19
    29:8,13 30:3,5
    30:14,15,18,21
    43:11,13 44:2
    44:5,11,22
    45:13 49:14,16
    50:11 51:1
    54:25 56:8,12
    62:21,22
chosen 54:21
Circuit 59:7
Circuit's 59:3,8
circumstances

42:12,13 44:19
    62:7
cited 42:16 55:7
citizens 21:20
    39:21 42:9,10
    42:11 43:2
    45:11 47:13
    48:22
civil 62:8
classroom 22:2
    22:14
clean 22:1
cleaning 22:14
clear 10:7 26:13
    26:22 35:18
    50:17 51:22
clearly 5:3
clemency 11:25
client 30:6
clinical 25:23
    53:2,12
Clinton 28:24
close 11:16 14:3
    14:4
Code 58:14
codes 7:22 60:10
coincidence
    41:24
college 29:23
combat 50:23
come 7:6 41:25
    43:19
comes 14:16
    19:23 30:6
    51:6
coming 50:16
commission
    14:22,22 28:3
    49:9 58:13
commission-f...
    10:2
commit 9:15
committed 9:16
    58:19
committees
    42:20
committing

39:17
**common** 15:16
   32:12 46:22
   50:6
**company** 5:22
   40:23
**complained** 47:2
**complete** 6:23
   56:3
**completely** 9:5
   11:8 12:24
   18:17 21:22
**complicated**
   33:12
**composite** 55:10
**comprehensive**
   7:22 60:10
**con** 8:17
**concede** 4:5 12:9
   12:15 41:17
**concept** 28:14
**concern** 47:10
**concerned** 19:23
**concerns** 22:25
**conclude** 27:17
   55:18
**concluded** 25:8
   26:20
**conclusion** 3:13
**concurrence**
   35:24
**conduct** 7:22
   10:2 15:1,1,5
   21:21 29:11
   32:23 35:2
   36:4 41:7
   45:19 55:11
   60:10,23
**confirms** 3:25
**Congress** 50:23
**congressperson**
   23:6
**connection**
   10:16
**cons** 8:14
**considerably**
   23:11

**consistently**
   50:22 63:5
**conspiracy**
   35:19 51:12
**constituent**
   16:16 23:7,10
   24:11 33:7
   38:10
**constituents**
   15:13
**constitutes** 13:4
   23:21 49:13
   50:5
**construed** 49:24
   50:10,12
**contact** 27:19
   35:17
**contacting** 25:21
   26:25
**continues** 20:5
**continuously**
   31:16
**contract** 5:21
   6:7 16:1 35:14
**contracting**
   22:13
**contractor** 5:20
**contracts** 58:17
**contribution**
   31:13 40:3
**contributions**
   31:10 39:24
   40:2,6,11
   41:12 42:8,8
   42:19 43:8
   45:20
**contributors**
   41:1
**control** 38:24
**controlled** 50:2
   55:12
**controversy**
   52:22 53:1
**convict** 6:18
   12:23 13:2
   25:6,10 26:17
**convinced** 37:7

**convinces** 37:21
**core** 50:14
**corporate** 42:24
**correct** 15:10
   29:13 39:25
   52:22 53:3,5,8
   58:20
**correctly** 14:1
   35:13
**corrupt** 10:8,12
**corruption** 7:20
   7:24 39:7 46:9
   50:21,24 55:6
   55:8 59:25
**counsel** 28:7,22
   28:23,24,25
   29:1 54:25
   56:8 62:22
**count** 55:23
**country** 32:13
**counts** 23:25
   57:10
**course** 13:15
   17:17 35:7
   37:17 43:6
   54:11
**court** 1:1,12 3:9
   3:14 7:22 10:6
   10:9 20:1,14
   24:4 28:12
   31:10 34:18
   39:9,15 41:9
   41:21 42:11,15
   42:16 43:2,9
   48:17 49:4,24
   50:9,18,20
   51:7 55:13
   62:25 63:7,10
**Court's** 46:18
   51:7
**courts** 10:6 16:5
**cover** 58:17
**covered** 43:3
   51:9 62:10
**create** 15:23
   35:9
**created** 36:10

**credibility** 52:14
**credits** 43:17,23
   45:1
**crime** 9:7 16:22
   40:11 41:2,14
   41:21 49:13
   50:6 54:5 56:4
**criminal** 15:22
   22:22 29:24
   31:25 32:1,15
   35:18 36:1
   37:13 39:12
   43:10 61:5
**criminalize** 33:9
**criminally** 17:22
**cripple** 29:3
**critical** 4:24,25
   25:5 30:14
   31:7 36:2
   40:24 42:10
   52:15
**critically** 11:6
**crooks** 47:21
**cross** 4:9 7:19
   11:4
**crossed** 4:3
   19:20 22:20
   26:21
**crosses** 22:24
**cure** 31:25

——————

**D**

**D** 3:1
**D.C** 1:8,15,18
   59:2,7
**dangerous** 32:16
**day** 14:4 15:12
   24:10,10 43:21
**decide** 33:24
**decided** 13:10
   13:10
**decision** 3:13,17
   4:2 5:10,15
   6:10,12,14 7:3
   7:6 8:7 9:4,21
   11:5,22 12:13
   14:5,7,17,25

20:21,25 22:18
   22:19 24:9
   29:2 39:11,20
   42:14 44:25
   48:9 49:10,11
   49:12 51:7
   57:17 59:3,8
   59:14
**decision-maker**
   4:2
**decision-make...**
   3:18 59:18
**decision-maki...**
   7:25
**decisionmaker**
   12:3 19:16,19
   59:15,16
**decisions** 3:19
   27:25 59:12
**dedicated** 63:9
**defendants**
   11:24
**deferred** 43:23
**defining** 20:4
**definition** 20:17
   20:19 25:24
   45:2 46:20
   47:2,3 50:15
   52:20
**delineated** 42:14
**democracy** 29:4
**demonstrated**
   11:3
**denial** 6:13
**denied** 6:13,13
**Department**
   1:18 32:7 38:7
   38:20
**depends** 23:4
**Deputy** 1:17
**describe** 15:20
   15:21 32:10
**determined**
   50:10
**dietary** 9:25
**difference** 5:5,9
   5:12 22:7,8

**different** 14:22
15:14 26:4
36:22 53:15
54:17
**differently**
45:16,18 46:4
53:13
**difficult** 21:8
33:13 43:6
51:18
**difficulty** 49:16
50:16
**direct** 4:23
10:12 27:19
49:10
**directed** 36:21
**directing** 54:19
55:19
**direction** 14:19
29:19
**directly** 10:4
**disagree** 25:24
**disclose** 48:20
**disclosed** 36:5
**discretion** 15:2
**discussed** 8:15
44:3 61:11
**discussing** 48:3
**discussion** 7:5
**dishonest** 31:23
31:24 32:23
38:2 58:24
**disputes** 41:21
**disregard** 3:13
**dissented** 47:12
**dissenting** 41:20
**distinctly** 63:3
**distinguish**
17:18
**district** 10:6,9
16:5 19:25
20:13 24:4
**division** 29:24
33:6 38:8
39:12 61:5
**doctors** 54:22
**document** 28:21

**documents** 8:14
**doing** 44:23
55:24 58:24
59:19 61:14
**dollars** 34:5
59:24 60:2
**donors** 31:1
**door** 30:13 43:1
**doubt** 36:4 37:7
37:14 41:4
43:9
**doubts** 41:15
**dozens** 16:11
**draw** 24:4
**drawing** 5:17
39:8
**Dreeben** 1:17
2:6 28:8,9,11
29:12 30:13,17
30:20,23 31:4
31:7 33:2,14
34:9,12,16
35:8,20,22
36:14 37:9,12
38:3 39:2,5,25
40:4,9,14,17
40:20 41:8
43:12 44:1,5
44:21 45:4,23
46:6,9,12,15
47:11,25 48:4
48:13,16 49:15
49:21 50:19
51:5,16,25
52:5,10,23
53:4,8 54:4
62:23 63:14
**Dreeben's** 59:22
61:2
**duties** 3:12
14:11,14 23:21
23:25 34:23
57:9 61:10,16
61:22

---
**E**

**E** 2:1 3:1,1

**easy** 21:10
**economy** 40:24
**effect** 29:21
36:19
**effort** 27:1
**efforts** 58:14
**either** 3:16 7:3,3
11:22 14:17
19:2 20:21
**elected** 16:18
29:3 38:21
**Election** 42:12
**element** 35:10
**elements** 33:21
33:23 34:18
46:16
**embarrassing**
19:9
**emerge** 6:7
**employee** 36:13
**employees** 36:11
**en** 59:3
**enacted** 50:23
**encompasses**
3:11
**encourage** 26:6
27:1,11
**encouraged**
27:10
**engage** 3:15
4:15,16 34:2
55:5
**engaged** 34:20
36:19 44:18
**engaging** 22:12
33:25 34:1
**enlightenment**
19:10
**enormous** 38:21
**entirely** 10:9
**entitled** 62:4
**entity** 41:5
**equation** 34:15
**erroneous** 13:1
25:4,7 26:17
**ESQ** 1:15,17 2:3
2:6,9

**essentially** 20:20
52:6 53:5 61:9
**established**
41:11
**et** 16:2 45:18
58:18
**ethical** 7:22,24
60:10
**Evans** 35:24
49:25
**event** 18:25
27:19 55:21,22
**events** 28:15
52:4,12 54:20
**eventually** 7:2
**Everybody**
37:23
**everyday** 40:6
**evicted** 15:16
33:8
**eviction** 18:12
**evidence** 8:11
10:12 11:3
12:10,16,21
19:12,14 25:3
25:10 53:16,25
**evidenced** 20:7
**evidentiary**
41:22
**evil** 51:12,13,14
**exact** 56:20
**exactly** 15:19
35:23 45:13
46:8 47:4
**example** 17:14
17:16 22:10
25:16 39:11
61:2,3 62:8
**examples** 9:9
**exchange** 14:11
**exclude** 33:18
**exclusive** 52:4
**Excuse** 61:25
**executive** 18:9
32:8
**executives** 42:24
**exemplary** 56:5

63:6
**exempt** 45:20
46:9 55:18
**exercise** 6:23
11:19,22 15:2
18:4 21:19
22:13 23:11
24:14 41:18
57:5
**exercising** 5:17
22:9,15
**exist** 39:1
**expensive** 31:14
57:19
**experience**
50:16
**expert** 6:22
**explain** 20:14
**explained** 35:25
**expressed** 47:9
**extend** 63:7
**extortion** 49:24
**extraordinary**
28:20 29:5,11
29:12
**extremely** 51:17

---
**F**

**F** 1:3
**facilitate** 60:1
**fact** 5:2 8:23
10:11 27:15
41:3 55:24
56:19 58:1,3
60:9
**facts** 7:11 8:6
11:9 16:8
18:23 26:16
38:13 49:2
**factual** 9:1
**faculties** 5:5
12:14
**fail** 47:21
**fall** 25:24
**fallback** 49:6
**falls** 14:1
**familiar** 62:13

Official - Subject to Final Review

| | | | | |
|---|---|---|---|---|
| **family** 44:8 | 44:3,7,14 45:9 | 59:2,6,11 60:4 | 24:1 25:3 | 49:6 51:3,8 |
| **fancy** 56:23,25 | 45:18 46:2 | 60:17,20 61:2 | 26:17 31:10 | 54:14 58:25 |
| **far** 32:1 | 51:20 | 61:7,25 62:6 | 38:15 49:16 | 59:13,13,23 |
| **fault** 19:25 | **fitting** 44:7 | **frankly** 60:4 | 51:3,5 | 62:12,16 |
| **favor** 6:10 12:21 | **five** 10:10,21,25 | **freedom** 59:1 | **gives** 31:1 | **government's** |
| 31:23 | 24:18 25:14 | **friendly** 37:25 | **giving** 15:4 | 10:12 23:25 |
| **favorable** 41:11 | 56:9 58:25 | **friends** 12:7 | 29:24 38:20 | 45:14,21,23,24 |
| **favoritism** 20:7 | **flesh** 16:8 | **fulfill** 29:3 | 52:14 57:11,25 | 46:2 48:18 |
| **fear** 38:25 | **fly** 44:8 | **fully** 36:5,25 | **go** 12:12 14:21 | 49:5 56:17 |
| **Federal** 36:10 | **focus** 25:15 | **fund** 49:9 | 16:11 19:13 | 57:8 |
| 36:11,12,19 | **follow** 13:20 | **fundamental** | 25:1 34:6,13 | **governmental** |
| 37:18,18 40:22 | 40:21 | 29:14 31:22 | 37:21 38:10 | 5:15 6:14 9:21 |
| 42:12 50:23 | **form** 7:24 23:15 | 32:19 42:1 | 43:20 44:9 | 11:18,19,23 |
| 56:19 57:6,13 | 55:10 | 59:20 | 59:1 | 13:5 14:5,6 |
| 57:22,23 58:3 | **formal** 18:5 | **funding** 28:3 | **goes** 12:18 32:1 | 20:24 21:19 |
| 62:12,16,20 | **former** 28:22,22 | **further** 18:23 | 50:6 | 22:3,13 23:21 |
| **feel** 45:16,18 | 28:23,24,25 | 20:4 25:4 | **going** 5:20 7:2,2 | 39:18 48:9 |
| 46:4 | **formulation** | 28:16 49:1 | 7:4,6,7 17:10 | **governor** 4:9,21 |
| **fellow** 6:20 | 21:9 24:1 58:6 | ——————— | 18:11 33:5,8 | 5:9,14 6:16,18 |
| **felony** 30:16 | 58:8 | **G** | 33:25 34:23,23 | 7:1,4 8:18,20 |
| 31:3 43:24 | **forth** 10:21 | ——————— | 34:25 35:3 | 9:3 11:4,10 |
| 45:3,5 | 35:13 | **G** 3:1 | 36:24 37:5 | 12:13 13:23 |
| **felt** 8:13 | **forward** 63:11 | **gain** 42:21 | 38:18 39:5 | 15:6 24:7 26:5 |
| **figure** 47:8 58:6 | **fourth** 35:9 | **gaining** 40:5,9 | 44:24 45:16 | 26:20 27:23 |
| 58:7 | **frame** 31:18 | **Ganim** 55:6 | 46:7 47:1 48:6 | 36:13 43:14,18 |
| **figures** 32:2 | **Francisco** 1:15 | **gap** 62:18 | 48:17 49:4 | 43:21 45:3 |
| **file** 30:8,11 | 2:3,9 3:5,6,8 | **gather** 44:15 | 51:17 55:1,5 | 48:18 52:13 |
| **filed** 28:21 | 3:23 4:8,17,20 | **general** 1:17 | 57:3 | 54:5,12,23 |
| **fill** 62:17 | 5:7,16 6:1,5,8 | 16:6 17:12 | **good** 8:22 16:20 | 55:22,24 |
| **final** 59:15,16 | 7:10,16 8:5,16 | 32:4 | 20:3 | **Governor's** 4:14 |
| **finance** 43:8 | 8:19,25 9:13 | **General's** 21:15 | **goodness** 16:11 | 13:9 51:19 |
| **find** 5:1,13 6:16 | 9:17,23 10:1 | 30:7 63:10 | 16:22 | 52:4,13 |
| 9:2 11:7 16:3 | 10:24 11:21 | **generally** 17:15 | **goods** 42:6 | **governs** 21:21 |
| 20:16 23:14,15 | 12:15 13:14 | **George** 28:23,25 | **government** | **grant** 11:25 |
| 41:3 44:19 | 14:2 15:10,25 | **getting** 6:12 | 3:10,15,17 | **gratitude** 40:10 |
| 50:13 56:6 | 16:4,13,21,23 | 30:13 53:12 | 4:14 9:4 12:6 | **gratuity** 56:19 |
| **fine** 16:24 25:14 | 16:25 17:3,8 | **gift** 35:9 44:20 | 12:21 13:7 | 56:20 57:7,13 |
| **firms** 5:21,24 | 17:11,13,20,23 | 57:18 | 14:18 15:8,14 | 57:23,24 58:3 |
| 6:3 | 18:2,13,17,21 | **gifts** 10:15 42:4 | 20:22 22:5,10 | **gravamen** 53:6 |
| **first** 22:2 23:13 | 19:5,7,11 20:2 | 62:14 | 22:11,12,15 | **Great** 37:23 |
| 24:22 27:13,24 | 20:18 21:6,22 | **Ginsburg** 5:4 | 23:19 26:25 | **group** 15:4 |
| 33:14,24 35:15 | 22:4,8 23:12 | 12:9 19:22 | 28:17,18 29:15 | **Growers** 57:18 |
| 41:9 42:1,3,5 | 24:13,14,22,25 | 59:21 60:14,17 | 29:17,20 30:6 | **guess** 52:18,19 |
| 49:22 56:16 | 25:2 26:1,9,12 | 60:20 | 30:24 31:2,8 | 53:22 |
| 58:6 63:3 | 27:3,7,9 41:16 | **give** 15:23 17:10 | 31:15 34:25 | **guest** 54:21 |
| **fish** 51:13 | 56:9,10,12 | 17:13 19:10 | 39:16 44:12 | **guidance** 31:11 |
| **fishing** 43:20,22 | 57:22 58:21 | 32:14 37:23 | 46:22 47:8 | **guilty** 15:8 45:3 |
| | | **given** 21:11,14 | | |

45:4
guy 6:23 54:16
  57:5

**H**

H.W 28:25
hand 3:19 10:14
happen 47:19
happened 41:5
  60:14
happens 34:4
harbor 39:8
harbors 36:10
hard 10:20
  45:19
hate 19:13
Hawaii 44:8
  45:10
he'll 37:22
Health 48:19
  55:20
healthcare 25:7
hear 3:3 57:5
heard 26:24
  43:1
hearing 63:11
heavily 36:19
  42:9
held 27:21
help 7:3 29:23
  33:3,11
helpful 34:17
helps 47:23
hey 57:4
HHS 16:14
high-dollar 31:1
hinged 10:10
hinky 6:22
Hobbs 23:1
  36:17 49:23
  50:7 60:24
  62:17
hold 39:10
holding 62:2
honest 36:17
  45:19
honest-services

50:8 60:24
  62:17
honestly 38:22
honesty 38:25
Honor 3:23 4:8
  4:17,20 5:7 6:8
  7:10 8:5 9:1,17
  10:24 11:21
  12:15 14:2
  16:4,23 18:18
  19:5,7,11 20:2
  20:11,18 21:6
  23:12 26:1,9
  26:13 27:4
  57:23 59:6
  60:4
Honor's 35:24
honorable 8:22
  35:5
hosted 52:12
hosting 18:25
  52:7,11 55:22
house 28:22,23
  28:24,25,25
  33:8 42:20,22
HUD 16:12
hundreds 37:22
  37:22
hurt 7:3
Huvelle 17:24
  20:3
hypothetical
  5:19 7:1 11:14
  21:12 23:5
  44:6 45:6
hypotheticals
  21:25 46:18

**I**

idea 8:22 20:11
ignoring 42:10
ill-advised 50:18
illegal 61:11
  62:4
implications
  29:16 45:7
imply 35:13,14

important 22:21
  29:16 35:10
  52:3 54:16
imprimatur
  39:16
improperly
  12:17,19
inappropriate
  55:1 62:20
includes 18:4
including 14:8
incorporated
  50:7
incumbent 24:4
independent 4:1
  12:2,3 19:19
  19:19 22:17
  57:5,18
Indian 15:9
indicative 38:15
  38:16,18
indicia 7:18 60:6
indictment
  10:22 26:2
  27:3 53:10,11
  53:14,15 55:3
  56:4
indisputed 49:7
individual 13:12
  55:9,14
individuals 8:12
  52:3
infer 9:14 10:13
inference 55:15
inferred 9:19
inferring 41:23
influence 3:19
  5:10,14,18
  6:17 7:13,19
  8:7,24 9:3,8,21
  11:5,23 12:13
  13:4 15:7,12
  16:7,11,20
  17:5 18:5,7,8
  19:17,24 20:12
  20:15,15,23
  23:11,16 24:8

25:22 28:16
  48:8 49:3,11
  54:13,22,23
  56:1 58:19
  59:18 60:7
influenced 35:1
  54:6
influencing 4:10
  14:6 15:22
informal 18:6
informed 36:16
ingratiation
  40:10
inherent 59:25
initiate 25:22
instruct 9:2
instructable
  53:22
instructed 4:11
  5:13,15 6:15
  9:4 12:17,20
  26:19 27:14
instruction 17:9
  18:18 21:11
  24:1 25:4,7
instructional
  41:22
instructions
  5:12 6:18
  10:19 13:1,2
  17:15,25 18:22
  20:6 21:14
  23:19 26:14,17
  50:17 53:10,24
  55:18
instructs 10:20
insufficient
  12:12
intend 55:11
intent 9:11,15
  19:24 36:1
interests 14:13
  49:12 61:15
interpret 60:13
invitations
  52:15
invite 52:3,7

62:23
involve 40:2
  42:13 45:6
involved 15:22
  37:20 38:6
  42:18
involving 15:2
irrelevant 9:10
issue 31:7 34:19
  35:10 36:1
  41:10 42:9
  46:20 55:17
issues 29:23
  36:22

**J**

J 1:15 2:3,9 3:6
  56:10
JA 54:9
janitor 21:25
  22:10
janitorial 22:12
January 63:4
job 13:8,9,11,25
  62:11
jobs 43:14 44:23
Johnnie 6:20
  11:11
Joint 10:18 18:3
Jonnie 13:18
  28:1,3 52:2,15
judge 10:20
  17:10,24 19:25
  20:3
judges 20:14
judgment 6:25
  12:2 14:25
  19:20 24:15
  39:13 57:6
juror 12:22
jury 4:11,25
  5:12,12 6:15
  9:2,14,18
  10:20 11:6,7
  12:12,17,19,24
  20:14 21:10
  23:13,14 24:1

Official - Subject to Final Review

24:6 25:2
26:14,17,19
27:13 31:11
36:4 37:6
38:12 41:3,23
44:19 55:14,18
56:6
**Justice** 1:18 3:3
3:8,21 4:4,12
4:18 5:4,16 6:2
6:6,24,25 7:15
8:1,10,17,20
9:6,14,22,24
10:17 11:7,12
11:13,14 12:9
12:18 13:6,15
13:20 14:7,20
15:11 16:1,10
16:14,22,24
17:1,4,9,12,17
17:21 18:1,10
18:14,19 19:3
19:6,8,21,22
19:23 20:5,12
20:16 21:1,2,3
21:3,12,17,23
21:24 22:6
23:2,3,5,23
24:8,13,16,24
25:1,12,17,19
25:20,21 26:7
26:10,22 27:5
27:5,8,20 28:5
28:7,11,19
29:8,13 30:3,4
30:5,14,15,18
30:21,25 31:4
31:6,12 32:7
33:3,14 34:3,9
34:10,14,16
35:7,12,21,22
36:8,14,20
37:1,3,4,10,12
37:16 38:4,7
38:21 39:2,3,5
39:22 40:1,5,9
40:13,15,17,19

40:20 43:11,13
44:2,6,11,22
45:12,13,24
46:6,8,11,14
46:15,24 47:12
47:15 48:1,5
48:11,14 49:14
49:16 50:11,25
51:1,2,11,17
51:24 52:6,10
52:18,24 53:6
53:9 54:4 55:6
56:8,13,24
57:15,16 58:5
58:10,11,12,22
59:4,10,21
60:12,14,17,20
61:1,23 62:1
62:21,22

_____
**K**
**Kagan** 5:16 6:2
6:6,24 13:20
19:21 21:2
23:2 24:13,16
24:24 25:1,12
25:19,21 26:7
26:10 27:5,8
27:20 51:24
52:6,10,18,24
53:6,9 54:4
61:1
**Kennedy** 3:21
4:4,12,18
10:17 11:13
20:16 21:1,3
21:17,23,24
22:6 23:23
25:17,20 26:22
27:5 30:4,25
31:5,6 35:12
35:21,23 37:3
37:10,12 50:25
51:2,11,17
**key** 19:4
**kind** 7:18 24:4
32:14 55:20

**kinds** 24:3 38:1
**knew** 5:19
**knotty** 33:12
**know** 7:4,11
10:2 17:4,7
19:13 29:22,22
30:2,4 32:3
33:8 37:19
38:9 39:1 40:1
40:23 43:19
44:13,14 45:1
47:23 48:2
53:21 54:15
**knowing** 9:7

_____
**L**
**lack** 4:14
**Lafite** 34:4
**language** 14:23
48:2,6,8 58:15
**large** 5:21
**larger** 45:6
**Laughter** 18:16
29:7 34:8 37:8
46:5 47:14
48:15 60:16,19
**launch** 52:12
**law** 4:14,19
21:21 31:25
32:1 35:18
37:13,19 38:25
50:6 62:18
**lawful** 41:7 45:8
**laws** 7:17,21
14:8 38:5 39:1
43:4 46:10
50:21
**lay** 34:18
**leaders** 25:8
**leading** 60:5
**leave** 32:22
**lectern** 62:24
**left** 19:19
**legal** 9:1 15:19
**Legally** 41:7
**legislation** 18:6
**legislative** 18:8

**legislator** 41:19
**legislature's**
18:6,7
**legitimize** 54:7
**let's** 12:11
**letter** 21:13
23:23 38:16
**letters** 15:13
16:11 18:11
24:3 38:8
**level** 16:7
**life** 55:21
**likewise** 11:1
57:12
**limit** 24:5 36:6
45:14 58:16
**limitation** 31:17
31:18,20
**limitations** 43:8
**limited** 31:15
33:16 51:10
**limiting** 21:4,7
39:23
**line** 3:18 4:3,9
5:17 7:20 11:4
14:15,16 19:20
21:11 22:20,24
26:21 38:23,24
39:6 47:20
48:3,5
**lines** 20:6
**list** 5:23 6:11,12
6:13 54:21
**listed** 24:18
31:24
**listing** 59:8
**litigated** 36:15
**litmus** 33:17
**little** 4:22 6:22
7:1 10:19
19:10 47:24
**loans** 10:15 42:6
**lobbyist** 20:9
**lobbyist's** 20:8
**local** 32:10
50:24
**locating** 43:15

**look** 15:15 18:12
23:7,8,10
29:16 33:19,20
38:13 43:19
54:18 55:2
58:12 59:8
63:11
**looked** 38:8
42:11 58:15
**looking** 15:19
31:19 38:23,23
39:23
**lot** 7:17 14:8,21
29:23 47:24
53:15 56:17
**lots** 54:16 60:10
60:22
**lower** 45:14
**lunch** 18:15
31:13,14 32:12
33:5,25 34:4
34:23 35:5,15
35:16,17 37:22
37:23 56:23,25
57:11,19,20
58:4
**luncheon** 27:21
**lunches** 36:7
37:6
**luxury** 42:6

_____
**M**
**majority** 41:20
**making** 11:22
12:19 14:5,17
19:12 22:23
23:4 26:4 40:6
59:14
**manage** 13:9
**manner** 63:6
**mansion** 27:21
52:4,13 54:20
55:22
**mantle** 42:3
**matter** 1:11
11:12 16:16
23:7,10 38:4

44:17 52:21,25
59:11 63:16
**McCormick**
41:10 49:25
**McDONNELL**
1:3 3:4 5:9,14
6:16,19 9:3
11:4,10 26:5
26:21
**mean** 20:15 22:2
25:16 29:21
40:19 45:8
47:22 49:18
50:12 52:19,20
53:20,21
**means** 34:24
35:25 56:22
57:10
**meant** 7:21,23
57:24
**medical** 5:5
12:14
**meet** 5:23 6:20
6:22 20:9
24:19,23 30:9
33:7 37:24
41:2 54:19
**meeting** 5:22 7:9
7:13,14 8:8
11:15,16 12:1
12:5 13:3,4,7
18:25 19:18
29:19,20,24
30:1,23,24
36:16 39:12,14
41:4 42:20,21
48:19,21 55:20
57:1,4 58:2
59:24 60:1,8
61:5 62:3
**meetings** 13:17
13:24 28:15
31:2 39:18
47:24
**member** 6:19
55:21
**members** 7:5

12:7
**mens** 35:11
36:23
**mentioned**
56:24
**Mere** 20:7
**merely** 18:24
19:4,9,9 33:25
41:11,24
**message** 39:15
39:21 45:11
47:6 49:1
**messages** 47:7
**met** 13:10
**metaphorical**
39:19
**MICHAEL** 1:17
2:6 28:9
**mid-level** 57:2
**Middle** 25:20
**milestone** 63:1
**milk** 42:18
**million** 42:18
**mind** 31:18
32:17 38:14,14
38:19 55:11
**minutes** 56:9
**misconceptions**
29:14
**misconduct** 7:24
**misunderstood**
24:17
**Mm-hmm** 18:1
**Model** 58:14
**moment** 9:11,15
**money** 7:8 9:7
9:11 14:11
15:4 22:11
39:14 42:23,25
61:9,10
**months** 16:17
**morning** 3:4
**moving** 31:9
**multimillion-d...**
51:19
**multiple** 33:21
33:22 34:18

49:23

―――――――
**N**
―――――――
**N** 2:1,1 3:1
**name** 56:24
**names** 29:10
**narrow** 48:16
50:14
**narrower** 51:24
53:4
**nation** 50:22
**national** 32:10
**nature** 38:15
**necessarily**
38:22
**need** 9:2,19 10:3
20:21,21 23:13
34:24 46:15
47:19 60:23
**needs** 18:22
**nefarious** 45:10
**neutral** 27:24
**never** 11:6 23:14
27:14,15
**new** 23:17
**nice** 43:21
**nod-nod** 35:17
**NOEL** 1:15 2:3
2:9 3:6 56:10
**nonperforma...**
14:14 61:16
**noted** 43:3
**notice** 18:12
**numbered** 10:19

―――――――
**O**
―――――――
**O** 2:1 3:1
**O'Connor** 60:12
**Obama** 28:22
**objective** 4:2
22:17
**obviously** 8:22
**occurrence** 40:7
**offense** 33:22
46:16
**office** 21:15 30:8
63:10

**officer** 63:10
**officers** 36:12
**official** 3:11,12
3:16,16,25 4:1
4:3,5,7 6:2,9
6:14 7:20,24
8:9 9:8,9,16,20
9:20 10:5,11
10:14,20,23
11:1,3,17,19
12:6,8 13:5,7
13:13 14:10,23
15:3,7,23
16:19 18:4,5,6
19:1,24 20:9
20:17,19 21:13
21:18 22:17,18
22:24 23:21,21
23:25 24:12,18
25:9 26:11,24
27:2,6,12
28:14 29:20
33:16,25 34:1
34:19,21,22
36:16 37:18,19
41:17 44:3,18
45:7 46:20
48:24,25 49:7
49:10 50:1,5
51:9 52:1,8,11
52:20 53:11,16
53:17,18,19,25
54:1,7,11 55:5
55:9,11,19
56:5,20 57:9
57:25 58:1
59:17,23 61:10
61:21,22
**official's** 20:8
**officials** 4:10
12:6 13:17
18:8 24:2
25:21 27:1
29:3 31:2 32:9
36:19,23 37:5
38:22 39:8,17
39:18 42:22

51:8 62:12
**okay** 24:24
25:12 31:14,16
31:20 44:13
45:16 46:11
60:1,1,3
**one-hundredth**
62:25
**ones** 62:7
**open-ended**
62:17
**opens** 43:23
**operates** 46:23
**opinion** 14:25
16:3 35:24
43:3 45:14
55:6
**opinions** 10:7
**opportunities**
34:2 54:11,16
55:4
**opportunity**
48:22
**oral** 1:11 2:2,5
3:6 28:9 62:25
**order** 3:12,15
6:2 12:8 22:1
42:21 46:25
**ordinary** 36:4
**organization**
47:18
**outcome** 7:19
11:5 12:4 13:4
14:6 49:3 60:7
**outset** 20:21
26:23
**outside** 61:9
**overly** 47:19

―――――――
**P**
―――――――
**P** 3:1
**page** 2:2 10:18
18:3 25:17
43:2
**paid** 5:23 9:8
42:22
**paragraphs**

Official - Subject to Final Review

10:21
pardon 15:24
part 12:14 13:25
  21:5 27:1 45:1
  47:9
particular 5:14
  11:5 28:16
  49:8 52:21
  53:23 58:4
particularly
  21:10 32:12
parties 4:4,19,21
  36:18
parts 15:14
party 8:3 52:7
  52:11 53:18
  62:3
pattern 10:13,15
  54:18
pause 29:16
pay 29:18 44:16
  48:23 59:24
  60:2
pay-to-play
  29:17
paying 39:10
  42:18,25 43:9
  57:20
payment 7:12
  7:13,15
payor 13:18
pays 7:7 30:17
Penal 58:14
pending 16:17
penny 31:16
  46:1
people 6:11 8:22
  15:4 29:6,18
  36:6 37:22,24
  38:19 41:5
  52:8 54:19,23
  55:25 58:24
perceived 8:24
  62:18
perfect 21:8
  32:22,23 47:3
  47:21

perfectly 38:9
  49:25 53:22
  55:8
performance
  14:13 61:10,16
peripheral
  37:21
peripherally
  37:20
permissible 35:9
person 15:7,23
  23:7 30:9 33:5
  35:1 44:24
  48:21 55:4
  57:10 58:18
  62:10 63:1
personal 38:17
  42:6
personally 41:18
persuade 11:25
  13:19 20:23
  30:11
Petitioner 1:4,16
  2:4,10 3:7
  28:13 32:18
  33:17 39:6
  42:2 46:17
  48:25 55:16
  56:11
Petitioner's
  29:17 48:7
  49:19 55:10
phone 28:15
  62:3
pick 15:16 52:17
piece 42:10
  53:24
pieces 53:15
place 35:15,18
plan 52:15
plant 43:15,24
play 40:8
please 3:9 15:15
  18:12 25:1
  28:12 41:1
point 4:19 8:4
  8:23 11:17

12:18 38:1
  43:1 45:12
  47:15 50:18
  57:15 58:5,6
  60:5
points 56:14
policy 44:10
polite 28:4
political 32:2
  37:20
politicians 15:13
  32:24
pool 6:4
pop 61:4
position 10:17
  10:22 11:18,20
  33:15 35:23
  45:22,25 46:2
  49:5,6 51:19
  59:25
positions 15:20
  63:5
possible 13:14
  31:18 37:24
possibly 12:5
  46:19 55:23
posture 4:13
pound 31:16
  46:1
power 11:20,23
  20:24 21:19
  22:9,13,15
  32:14 38:21,24
  41:19 59:17
  62:20
powers 32:7,16
  32:19 33:1
  47:9
practice 24:2
practices 42:17
  42:17 43:3
precise 21:8
  60:23
precisely 60:11
precondition
  35:16
preferential

48:22
preliminary 7:5
prepared 41:17
prerequisite
  6:12
present 8:3
  58:15
President 13:23
  23:9 28:22,23
  28:24 29:1
  31:1
pressure 20:23
pressured 8:13
pressuring 8:21
pretty 45:19
prevent 41:23
previously 49:24
price 42:22
primarily 36:20
principle 21:4,7
  21:10 39:23
priority 43:14
private 44:25
  61:9
pro 3:10 8:17
  30:22,22 31:8
  34:24 36:1
  40:12 41:13,15
  41:24 43:4,7
  50:1 51:22
  56:18,21 57:14
probably 6:9
  42:4
problem 20:13
  26:4 31:21,24
  32:5,7,20 33:1
  33:13 35:12
  58:22 62:14
problems 32:2
  56:17 58:9
proceeding
  52:22 53:1
  59:12
producers 42:18
product 6:21
  49:8 52:12,14
  53:3,19

products 54:8
prohibit 57:24
  60:11,23 61:17
  61:18
prohibited 4:3
  7:20
prohibits 14:9
  14:12 61:8,14
  61:20
promote 54:7
prompted 42:12
proof 50:1
proper 35:25
  58:7
properly 4:11
  26:19 27:14
  56:6
properly-instr...
  12:22
proposed 18:18
  18:22 20:6
  33:17
pros 8:14
prosecuted
  29:11
prosecutor
  32:15
prosecutors
  38:21 47:18
protection 35:10
  36:2 47:20
prove 26:5 31:8
  37:17 43:6
proved 10:25
  26:2 27:4,10
  43:5 56:5
provide 28:17
providing 5:18
proving 37:13
provision 14:9
  61:19
public 18:8 20:7
  32:9 39:8,16
  49:9 61:8
pulpit 4:22
purposes 36:17
  50:5

**push** 19:15
    27:25 39:6
    47:1
**pushed** 21:14
**pushing** 14:19
**put** 8:6 12:4
    22:18 25:3
    29:10 32:24
    39:10,15 44:12
    45:20
**puts** 32:11
**putting** 39:19

**Q**

**question** 4:9
    9:10 10:4
    12:21 19:9
    23:1 27:14
    36:20 37:4
    50:4 51:25
    52:19 59:11
**questions** 4:25
    27:24
**quid** 3:10 30:19
    30:19,22 31:8
    31:14,17 32:12
    34:5,24 35:25
    40:3,12 41:13
    41:15,23 43:4
    43:7 44:13
    45:6,15 46:3
    50:1 51:22
    56:18,21 57:14
**quids** 46:12
**quite** 14:24
    32:21 45:16,18
    60:15
**quo** 3:10 30:22
    31:9,19 34:24
    36:1 40:12
    41:13,15,24
    43:5,7 50:1
    51:23 56:18,21
    57:14
**quote** 20:7
**quoting** 29:1

**R**

**R** 1:17 2:6 3:1
    28:9
**raincoat** 37:25
**raised** 47:16,17
**range** 3:12
    23:20,24 34:22
    57:9
**rare** 63:1
**rational** 55:14
**rea** 35:11 36:24
**reach** 3:12 63:1
**read** 14:23
    18:20 20:5
    52:2 58:13,13
    58:14 59:22
**reads** 53:13
**Reagan** 29:1
**real** 32:19
**really** 6:21 7:12
    8:18 19:15,17
    22:22 25:24
    29:17 30:7
    38:19 46:19,21
    51:18,22 55:10
    60:8 62:13
**realm** 31:9
**reason** 41:4 45:5
**reasonable** 36:3
    37:7,14 41:3
**reasons** 31:22
**rebuttal** 2:8
    27:18 56:10
**recall** 63:3
**receipt** 41:12
**receive** 36:7
    37:25 38:1,7
**received** 35:2
    42:4 50:3
    55:12
**reception** 18:25
    25:8
**recipe** 38:20
    39:7,8
**recognize** 33:20
**recommendati...**

14:25 39:13
**record** 12:10
**records** 62:24
**refer** 3:22 11:11
    12:6
**reference** 4:13
**referral** 12:5
    22:23,23 23:4
    24:10 35:4
**referrals** 13:16
**referring** 13:3
    57:1
**refers** 4:1
**reflect** 62:24
**reflects** 60:8
**regardless** 12:16
**regime** 62:15,16
**regulations** 35:8
    36:6,9,11
**reject** 48:17 49:4
**relate** 53:16
**relevance** 36:9
**relevant** 10:5
**relies** 42:9
**remainder**
    27:18
**remaining** 56:9
**remedy** 46:19
**remember** 56:23
**remove** 31:20
**Report** 58:13
**representative**
    29:4
**representatives**
    54:20
**require** 21:19
    23:17
**required** 6:18
    12:23 13:2
    25:6 26:16
**requirement**
    36:1,3 56:18
    56:21,21 57:14
**requirements**
    36:24 37:13
**requires** 48:8
    52:21

**research** 4:6,16
    27:2 54:8
**researcher** 4:23
**researchers**
    25:22 27:15,20
**researchers'**
    27:25
**reserve** 28:5
**reserving** 27:18
**respect** 27:23
    36:23 49:12
**respectfully**
    62:19
**responded** 49:19
**Respondent**
    1:19 2:7 28:10
**response** 41:9
**responses** 8:25
    9:18
**restaurants** 34:6
**rests** 29:14
**result** 36:18
    40:10
**return** 54:6
    62:23
**review** 16:18
**ridiculous** 59:1
    59:5
**right** 6:5 8:16
    13:21 15:25
    16:13,21,24
    17:6,7 19:3
    21:18 23:4
    25:13 32:17
    33:4,4,19,20
    40:5 45:15
    46:1 53:13
    58:6 59:7
**Ring** 17:23
    19:25
**risk** 32:11,24
**ROBERT** 1:3
**ROBERTS** 3:3
    13:6 23:3 28:7
    28:19 29:8
    30:3,5,15,18
    30:21 43:11,13

44:2,11,22
    49:14,16 50:11
    51:1 56:8
    62:22
**role** 29:4 42:1
**room** 56:1
**rule** 16:6
**run** 46:16
**running** 61:3

**S**

**S** 2:1 3:1
**S1** 14:23
**safe** 36:10 39:8
**safeguards**
    41:23
**salary** 61:8
**satisfied** 48:7
**satisfy** 48:6
**saying** 15:14
    18:11 23:6
    35:3 38:12
    46:17 51:15
    54:1,24 57:17
    57:20 59:4
    62:2,8
**says** 7:4 16:19
    23:9 29:10
    30:7,9 33:6
    40:23 43:16,19
    48:19,25 59:25
    62:10
**scale** 12:4 39:11
**scales** 22:19
    39:20
**schedule** 13:10
**scheduler** 13:22
    13:24
**scheme** 39:16
**Scientific's** 52:3
**scope** 53:5
**searching** 32:25
**second** 21:5
    26:18 27:14
    32:6 55:7 58:5
    63:1
**secondly** 24:25

Official - Subject to Final Review

25:2 26:18
28:1
**secretaries**
16:15
**secretary** 13:9
16:12,12,15
48:19 55:19
**Section** 14:9
36:16
**sector** 44:25
**secure** 54:7
**see** 11:15 14:21
21:4 29:25
33:12 36:8
38:10 45:13,19
53:20 57:21
**seeks** 28:13
**seen** 32:20
**selling** 13:24
**Senate** 14:22
**senator** 23:24
38:9 40:22
**Senator's** 38:19
**Senators** 37:5
**send** 22:16 24:3
39:20
**sending** 19:18
21:13 47:6
**sends** 45:11 47:5
49:1
**sense** 46:22
**sensitive** 29:9
**sent** 23:23 24:11
39:15 49:2
**sentence** 56:3
**separate** 14:9
19:16 26:13
35:24
**separating** 41:6
**separation** 32:6
32:16,19 33:1
47:9
**serious** 22:25
32:2 58:9
**service** 62:8
63:9
**services** 23:1

36:18
**set** 10:21 15:20
35:13
**sets** 54:15
**setting** 12:1
**settled** 24:2
**settling** 49:17
**shape** 21:20
23:15
**sharpen** 8:2
**shift** 38:24
**short** 54:24
**show** 34:25
41:13
**showed** 50:18
**showing** 36:3
**shows** 19:12,14
**shrink** 46:20
**side** 30:19,22
31:15,17,19
34:14,15 39:1
**sides** 47:20
**sides'** 15:20
**sign** 52:16
**significant**
55:21
**similar** 14:24
15:1 33:23
**simple** 12:5
**simply** 3:25 12:1
13:3,16 22:14
22:16,23 24:9
24:11 27:24
28:17 62:7,9
**single** 47:16
**sit** 7:8,12,15,16
30:10
**sitting** 8:2
**situations** 35:9
**six** 50:9
**Skilling** 50:9
55:8
**Smith** 16:16,19
16:20 18:14
**Smith's** 18:12
**so-and-so** 15:15
30:10

**social** 55:24
**sold** 45:8,9
**Solicitor** 1:17
21:15 30:7
63:9
**solve** 20:13
**solved** 56:18
**somebody** 5:19
12:2 13:3 19:8
22:16 23:6
28:17 29:21
30:6,17 34:20
35:3 39:10
53:18 56:23
57:24 61:3,6
**somewhat** 11:14
38:15,16,18
**sorry** 60:18
**sort** 5:18
**Sotomayor** 8:10
8:17,20 9:6,14
9:22,24 11:8
11:12 12:18
57:16 58:11
61:23 62:1
**Sotomayor's**
55:6
**sought** 42:2
**sovereign** 41:19
59:14
**speak** 8:3
**special** 31:1
**specific** 10:10
48:1
**specifically**
42:16
**speech** 19:1
**spread** 42:19
**staff** 6:19 7:6,8
7:12 12:7
**staffer** 57:2,4
58:2
**standard** 17:18
24:23 35:18
51:4,6,6
**standards** 24:19
**standing-alone**

19:1
**Star** 52:3 54:21
54:22
**Star's** 54:8,19
**start** 56:16 59:7
**started** 39:24
**state** 4:18 10:2
24:8 25:22
27:1 32:10
36:13,13,23
37:17,18,19
38:13,14 40:24
43:14,16,17,24
50:23 62:15,18
**States** 1:1,6,12
3:4 32:9 63:6
**statute** 14:1,23
14:24 22:22
33:20 36:18
49:18,20 50:9
51:9 52:20
56:19,20 57:7
57:13,23,24
58:3,9,15,16
59:22 60:25
61:7,13,20
62:17
**statutes** 33:22
49:23 60:9,11
60:22,24 62:5
62:8
**step** 54:24
**stream** 43:20
**strict** 31:10
**strictly** 36:6
**stringent** 62:15
**structure** 47:8
**structured**
53:14 55:3
56:4
**studies** 8:13,15
10:2 25:23
52:16 53:2,13
54:8,25 56:1
**study** 4:6 9:24
15:5 49:8
**stunning** 50:20

51:2
**submission**
36:15 48:18
**submit** 62:19
**submitted** 63:13
63:16
**substantial**
37:14
**substantially**
61:15
**suddenly** 32:14
**sufficiency** 26:8
26:19 55:17
**sufficient** 6:7
12:10,16 23:16
41:13 46:3
**suggest** 8:6
48:13
**suggested** 13:21
48:9
**suggesting** 7:11
24:20 46:18
60:12
**suggestion** 57:2
**suggests** 50:17
**suit** 52:22,25
59:11
**Sun** 57:18
**Sun-Diamond**
3:21,24,25
7:23 61:11
**supplemental**
10:18 54:9
**supplementing**
61:8
**supplements**
9:25
**supplies** 22:12
**support** 28:2
51:20
**supporter** 41:6
**supporting**
30:11
**supports** 42:22
**suppose** 5:19 7:1
13:6,12,22
23:8

Official - Subject to Final Review

supposed 8:3
32:3,4
supposedly
19:16
Supreme 1:1,12
sure 4:17 5:23
6:1 7:10 16:4
17:8,20 21:17
21:18 23:3,3
41:18 45:4
57:20 61:7

**T**

T 2:1,1
tailored 17:15
18:23
take 4:4 11:17
16:18 20:8
25:7 29:20
30:1 38:12
39:12,14,14
48:19,21 55:20
56:22 57:4
58:4 60:24
61:2 62:9,11
62:14
takes 31:13
35:15,17 49:10
53:15
talk 7:7 43:20,22
53:19
talking 15:4,22
30:21 33:21
36:24 43:18
44:23,24 49:22
49:23 50:4,8
51:12 52:11
talks 55:4
target 7:23
tax 43:17,23
45:1 51:19
taxes 43:23
telephone 20:8
tell 4:12,15 8:10
9:19 10:3
23:13 33:4
37:5 39:12

45:15,25 46:1
46:24 47:4
temporal 10:15
tempting 46:6
tenure 63:9
terms 5:9
terrible 39:20
47:6
test 5:18 33:17
testified 27:22
42:24
testimony 8:14
testing 5:6,8
textual 46:21
thank 28:7,11
56:7,8,12 57:1
57:17 62:21,22
63:12,14
thanking 57:24
thanks 57:11
58:4
theory 21:14
29:17 52:25
55:5,8 56:18
57:9
thing 23:9 35:2
40:7 41:6
46:19 50:2
53:7 58:24
things 10:25
11:2 23:12
27:23 28:14
30:14 33:18
38:1 41:9 51:8
51:10 54:5
55:12 58:17,19
think 3:24 4:20
4:24 5:8 6:8
7:11,16,18 8:8
8:21 11:1
12:19 13:14,24
14:2,7,15 16:5
16:6 17:3,6,14
18:22 19:11
20:11,18 21:6
21:7,9 22:14
22:21,23,25

23:16 24:18,19
24:20,23 26:3
26:23 29:5,11
29:14,15 30:23
31:21 33:10,13
33:18,19 34:17
35:10,23 36:20
36:22 37:12
39:6,15,22
41:16 44:5,12
45:21 46:17,17
46:21 47:11
48:4,16,17,24
49:1,5,21
50:19 51:16
55:2 58:8,16
58:20 59:2,7
61:22 62:7
thinking 43:15
thinks 16:20
51:21
third 25:16
26:25 34:24
60:5
thought 9:7 17:2
17:24 20:3
26:24 44:11,17
44:17 47:2
48:9
thousand 34:5
59:24 60:2
three 5:21,24
6:3,11 50:12
56:14
thrown 21:25
thumb 12:4
22:19 39:11,19
ticket 32:13
time 12:7 27:18
28:1,6 35:14
35:15 41:12
44:4,9 54:17
60:15 61:4
times 58:25
63:12
timing 41:24
tobacco 10:2

28:2 49:9
told 4:25 11:6
23:15 54:25
totally 20:13
tough 37:7
tour 57:11,21
58:1
tremendous
54:13
trial 23:18
tried 5:1,10,14
6:17 9:3 20:20
26:5 27:9,11
tries 15:7 58:18
trip 45:10
trouble 55:13
troubled 53:23
trout 43:20,22
44:3,7,14 45:9
45:17 46:2
51:20
true 27:8 58:18
trust 6:21
try 7:13 12:13
13:18 19:15
20:22 22:18
24:8 27:25
trying 3:19 7:19
8:24 11:4,23
11:24 12:3
13:3 14:19
19:16 37:16
47:8 49:2
51:16 54:23
58:5 60:7
tuition 29:23
turned 10:9
two 4:25 5:2,21
5:24 6:3 8:25
9:17 10:16
23:12 24:22
26:13 27:22
31:21 32:2
41:8 52:11
57:15 59:19
type 24:9
types 46:12

55:19

**U**

U.S.C 14:11
43:4
Uh-huh 59:10
ultimate 32:8
39:20 49:3
Um-hmm 17:11
unconstitutio...
50:13
unconstitutio...
49:20,22
uncontrollable
32:15
understand 9:23
16:6 20:12
34:10,16 47:22
52:24
understood
13:25 59:6
undertake 4:6,6
4:10
undertaking
14:10
unfettered 6:23
union 40:23
United 1:1,6,12
3:4 32:9 42:9
42:10,11 43:2
47:13 63:6
universities 49:8
52:16
university 4:5
4:15,23 8:11
15:5 27:15,20
53:2,12 54:2
unlawful 41:7
unprosecuted
32:23
upheld 29:2
urge 3:17 15:18
20:23 27:15
urged 39:7,9
urger 17:19
urging 14:18,21
41:4 59:23

Official - Subject to Final Review

use 15:18 16:10
19:2,3 20:22
62:16,20
useful 17:24
UVA 54:15,24

**V**

v 1:5 3:4
vacation 44:9
vague 49:20,22
60:9 61:24
62:2,10
vagueness 22:25
32:5 58:9
Valdes 59:8
valid 49:25 55:8
validated 55:7
value 35:2 50:2
54:6 55:12
variety 42:19
VCU 54:14
ver 58:8
verbal 58:6,8
version 11:8
view 8:4 20:17
21:24 22:4
26:16,20 28:15
39:4 40:16,17
43:1 47:23
48:2 52:9 56:2
60:3
viewed 55:23
vigorously 11:10
violate 7:17
violated 57:12
58:3
violating 14:8
violation 14:10
43:10 57:6
61:21
Virginia 4:13
25:22 44:24
49:8 53:2,12
54:2
virtually 32:15
visitors 54:14
vote 14:25 16:2

18:6 41:16,19
41:20
votes 50:12
voting 58:17

**W**

W 28:23
wait 14:21 15:8
15:11 38:6
want 7:11 16:10
17:4,7 23:9
31:20 32:1
33:11 39:3
40:15 41:25
47:22 48:2
59:24
wanted 9:16
54:22 62:16
wants 8:18
30:10 37:23,24
37:24 38:10
56:1
Washington 1:8
1:15,18
wasn't 5:2,13,15
6:15 8:2 9:4
19:15 21:11
52:10 55:1
way 6:10 9:16
16:8 18:15
19:17 20:22
23:15 28:1
33:19,20 39:19
40:24,25 46:22
50:14 53:13
55:3,16 56:3
59:5 60:6
ways 44:23
54:17
we'll 3:3 43:20
43:20
we're 7:6,7 15:3
31:9,19 33:21
35:21 38:18
39:22 47:17
49:17,22,23
50:4,8 52:11

we've 50:16
weapon 31:25
32:1
Wednesday 1:9
week 15:12,16
18:15
weight 44:12
went 18:24 20:4
weren't 48:7
whichever 7:7
White 28:22,23
28:24,24,25
42:20,22
widespread 40:8
Williams 6:21
9:16 13:18
28:2,3 52:2,7
Williams' 52:15
willing 29:9
willingness 20:8
win 55:16
window 55:10
wine 34:4 51:13
56:24
wink-wink
35:17
winning 25:14
witnesses 27:22
word 15:11,18
15:19 17:6
19:4,13,22,22
words 5:24 13:8
15:20,21 16:2
17:5,7 20:1
32:22,25 33:4
33:5,11 44:13
49:17 58:23
59:9
work 34:20
38:19
workable 51:3,6
worried 47:17
worry 37:6
worse 32:11
worst 7:23
worth 34:5
44:14

wouldn't 5:11
47:3 54:3
wrap 42:3
write 15:13,21
48:3,6 58:23
writes 33:6
38:17 40:22
writing 38:17
wrong 3:15
45:25 56:2
wrote 18:2

**X**

x 1:2,7

**Y**

yeah 9:13 37:1
48:11,12,12,12
50:11
years 50:9 63:8

**Z**

zealous 47:19

**0**

**1**

10,000 45:16
10:02 1:13 3:2
1083 18:3
11:04 63:15
12 38:18
14 54:9
15-474 1:4 3:4
18 16:17 43:4
1914 51:7
1972 42:13
1989 63:4

**2**

2 42:18
201 14:9 36:16
43:4 46:21
2016 1:9
27 1:9
28 2:7

**3**

3 2:4
356 43:2

**4**

**5**

5 14:11
5,000 61:4
500 34:6
56 2:10

**6**

60 10:18 25:18
6091 25:19

**7**

7353 14:11

**8**

**9**

9-0 3:13,22,24